# No. 22-7146

## United States Court of Appeals
## for the District of Columbia Circuit

◆

PETER A. CHIEJINA, AND PICCOL NIGERIA, LTD.,

*Petitioners-Appellees*,

- v. -

FEDERAL REPUBLIC OF NIGERIA,

*Respondent-Appellant.*

◆

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

◆

**OPENING BRIEF OF
FEDERAL REPUBLIC OF NIGERIA**

Tara M. Lee
Scott Lerner*
Susan L. Grace*
T.J. McElhinney*
Helin C. Akcam*
**WHITE & CASE** LLP
701 Thirteenth Street, NW
Washington, DC 20005
+1 202 626 3600

*Application to United States Court of Appeals for
the District of Columbia Pending

February 10, 2023                    *Counsel for Respondent-Appellant*

## CERTIFICATE AS TO
## PARTIES, RULINGS, AND RELATED CASES

Pursuant to Rule 28(a)(1) of the Circuit Rules of the United States Court of Appeals for the District of Columbia Circuit, Respondent-Appellant the Federal Republic of Nigeria ("Nigeria") respectfully certifies the following:

## I.     Parties and *Amici Curiae*

<u>Appellant</u>.    Respondent-Appellant Nigeria is a foreign state within the meaning of the Foreign Sovereign Immunities Act, <u>28 U.S.C. §§ 1602</u> *et seq*. Nigeria specially appears in the appeal before this Court and maintains that no exception to sovereign immunity applies and that it has not been served with process in accordance with <u>28 U.S.C. § 1608(a)</u>.  By appearing in the appeal before this Court, Nigeria specifically does not waive its immunities, privileges, or defenses, including its defenses of lack of subject-matter jurisdiction and lack of personal jurisdiction.

<u>Appellees</u>.  Petitioners-Appellees are PICCOL Nigeria Ltd. ("PICCOL") and Peter A. Chiejina.  PICCOL is an inactive limited liability company organized under the laws of Nigeria that, as of June 2019, had its registered office at No. 13, Ekiomado Street, Off 4 S & T Road, Uselu Quarters, P.O. Box 6392, Benin City, Edo State, Nigeria.  Mr. Chiejina was the Managing Director of PICCOL.

## II.     Ruling Under Review

The ruling under review is the memorandum opinion and order entered at docket entries 23 and 24 in case number 1:21-cv-2241-RJL on August 24, 2022 by Judge Richard J. Leon of the United States District Court for the District of Columbia denying Nigeria's Motion to Dismiss Petitioners-Appellees' Petition to Confirm Foreign Arbitral Award, and finding personal jurisdiction over Nigeria and subject-matter jurisdiction over the Petition.  This ruling is unpublished and reported at *Chiejina v. Fed. Republic of Nigeria*, 2022 WL 3646377 (D.D.C. Aug. 24, 2022). This ruling is immediately appealable under the collateral order doctrine.  *See Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004) (finding that "[t]he denial of a motion to dismiss on the ground of sovereign immunity satisfies all three criteria [of the collateral order doctrine], and is therefore subject to interlocutory review"); *accord Process & Indus. Dev. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 581 (D.C. Cir. 2020) ("*P&ID I*").

## III.     Related Cases

This case has not previously been before this Court.  There are no related cases pending before this Court or any other Court in the United States.

## TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

    I.    Parties and *Amici Curiae* ..............................................................i

    II.   Ruling Under Review ................................................................. ii

    III.  Related Cases............................................................................. ii

TABLE OF CONTENTS...................................................................... iii

TABLE OF AUTHORITIES ................................................................iv

GLOSSARY ........................................................................................ vii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................2

STATUTES AND OTHER AUTHORITIES...........................................2

STATEMENT OF THE CASE................................................................3

    I.    PICCOL Contracts With Nigeria To Construct Gully Erosion Controls .....................................................................3

    II.   PICCOL And Nigeria Have A Dispute And Petitioners Demand Arbitration.....................................................................6

    III.  Petitioners Seek To Confirm The Award In The U.S. .............7

SUMMARY OF ARGUMENT .............................................................10

STANDARD OF REVIEW ..................................................................11

ARGUMENT ......................................................................................12

    I.    THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION OVER MR. CHIEJINA'S CLAIMS ...........................12

    II.   THE DISTRICT COURT LACKED PERSONAL JURISDICTION OVER NIGERIA..........................................................17

CONCLUSION....................................................................................25

CERTIFICATE OF COMPLIANCE.....................................................26

STATUTORY ADDENDUM ..............................................................1a

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<u>**Cases**</u>

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)................................................................12

*Balkan Energy Ltd. v. Republic of Ghana*,
302 F. Supp. 3d 144 (D.D.C. 2018)..........................................16, 17

*Berkowitz v. Republic of Costa Rica*,
288 F. Supp. 3d 166 (D.D.C. 2018)..........................................22, 23

*Chevron Corp. v. Ecuador*,
795 F.3d 200 (D.C. Cir. 2015)..........................................12, 13, 15, 16

*Chiejina v. Fed. Republic of Nigeria*,
2022 WL 3646377 (D.D.C. Aug. 24, 2022) ............................. ii

*Democratic Republic of Congo v. FG Hemisphere Assocs., LLC*,
508 F.3d 1062 (D.C. Cir. 2007)..........................................18

*Doe I v. State of Israel*,
400 F. Supp. 2d 86 (D.D.C. 2005)..........................................18

*Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*,
225 F. Supp. 3d 18 (D.D.C. 2014)..........................................23, 24

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*,
703 F.3d 742 (5th Cir. 2012) ..........................................13, 15

*G.E. Transp. S.p.A. v. Republic of Albania*,
693 F. Supp. 2d 132 (D.D.C. 2010)..........................................19, 20

*Gater Assets Ltd. v. AO Moldovagaz*,
2 F.4th 42 (2d Cir. 2021) ..........................................13, 15

*Hardy Expl. & Prod. (India), Inc. v. Gov't of India*,
219 F. Supp. 3d 50 (D.D.C. 2016)..........................................24

*Kirkham v. Societe Air France*,
429 F.3d 288 (D.C. Cir. 2005)..........................................11, 12

iv

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*,
    376 F.3d 1123, 1126 (D.C. Cir. 2004).......................................................... ii, 2

*LLC SPC Stileks v. Republic of Moldova*,
    985 F.3d 871 (D.C. Cir. 2021)..................................................................12, 16

*Mani Kumari Sabbithi v. Major Waleed KH N.S. Al Saleh*,
    623 F. Supp. 2d 93 (D.D.C. 2009).....................................................18

*Marlowe v. Argentine Naval Com.*,
    604 F. Supp. 703 (D.D.C. 1985).......................................................20

*Nikbin v. Islamic Republic of Iran*,
    471 F. Supp. 2d 53 (D.D.C. 2007)....................................................17

*Odhiambo v. Republic of Kenya*,
    764 F.3d 31 (D.C. Cir. 2014)..........................................................12, 13

*Orange Middle East & Africa v. Republic of Equatorial Guinea*,
    2016 WL 2894857 (D.D.C. May 18, 2016)..........................................22, 23, 24

*Process & Indus. Devs. v. Fed. Republic of Nigeria*,
    962 F.3d 576 (D.C. Cir. 2020) ("P&ID I") ............................ ii, 1, 13, 22, 23, 24

*Republic of Sudan v. Harrison*,
    139 S. Ct. 1048 (2019)...............................................................18, 23

*Rosenkrantz v. Inter-Am. Dev. Bank*,
    35 F.4th 854 (D.C. Cir. 2022).........................................................12

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)..................................................................12

*Simon v. Republic of Hungary*,
    812 F.3d 127 (D.C. Cir. 2016).......................................................14, 15

*Space Sys./Loral, Inc. v. Yuzhnoye Design Office*,
    164 F. Supp. 2d 397 (S.D.N.Y. 2001) ..............................................20

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
    30 F.3d 148 (D.C. Cir. 1994)........................................................18, 23

**Statutes and Rules**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1330(b) ........................................................................17, 18

28 U.S.C. § 1605(a) ...................................................................1, 2, 8, 13

28 U.S.C. § 1608(a) ............................... 8, 9, 10, 11, 12, 18, 19, 20, 21, 23

Fed. R. App. P. 4(a) .............................................................................1

Fed. R. App. P. 32 ..............................................................................27

Fed. R. Civ. P. 12(b) ...........................................................................8

**Other Authorities**

Arbitration and Conciliation Act (1990) Cap. 19 (Nigeria) ................................5, 20


*Authorities upon which Nigeria chiefly relies are marked with asterisks.

## <u>GLOSSARY</u>

| | |
|---|---|
| **AGREEMENT** | Contract entered into by Nigeria and PICCOL for the construction of gully erosion control structures in Nigeria's Imo State, dated April 20, 2005 |
| **AMDCH** | Abuja Multi Door Court House |
| **ENGINEER** | Director of Federal Public Works in the Ministry of Works and Housing |
| **FSIA** | Foreign Sovereign Immunities Act, <u>28 U.S.C. §§ 1602</u> *et seq*. |
| **JA** | Joint Appendix |
| **NEW YORK CONVENTION** | Convention on the Recognition and Enforcement of Foreign Arbitral Awards |
| **NIGERIA** | Federal Republic of Nigeria |
| **PETITION** | Petition to Confirm Foreign Arbitral Award filed in the United States District Court for the District of Columbia on August 24, 2021 by Petitioners in civil action number 1:21-cv-02241-RJL |
| **PETITIONERS** | Mr. Peter A. Chiejina and PICCOL Nigeria Ltd. |
| **PICCOL** | PICCOL Nigeria Ltd. |
| **RCICAL** | Regional Centre for International Commercial Arbitration - Lagos |

## JURISDICTIONAL STATEMENT

This appeal arises from a Petition to Confirm Foreign Arbitral Award (the "Petition"), brought by PICCOL and Mr. Chiejina against Nigeria. JA__[Pet. 1]. The United States District Court for the District of Columbia (the "district court") held that it had subject-matter jurisdiction over the Petition under the FSIA's arbitration exception to foreign sovereign immunity, 28 U.S.C. § 1605(a)(6). JA__, __[Mem. Op. Supp. Order Denying MTD ("Op."); Order Denying MTD ("Order")]. As set forth below, Nigeria disputes the existence of subject-matter jurisdiction under the FSIA.

The district court issued its order on August 24, 2022, denying Nigeria's motion to dismiss for lack of personal and subject-matter jurisdiction under the FSIA. On October 24, 2022, Nigeria timely filed its notice of appeal pursuant to Fed. R. App. P. 4(a)(1)(A) and 4(a)(5), following the district court's order granting a joint motion to extend the deadline to file a notice of appeal. JA__, __[Notice of Appeal; Min. Order Sept. 8, 2022].

Because Nigeria appeals the denial of its motion to dismiss on foreign sovereign immunity grounds, this Court has jurisdiction over the appeal under 28 U.S.C. § 1291 pursuant to the collateral-order doctrine. *See P&ID I*, 962 F.3d at 581 ("[T]his Court repeatedly has held that the collateral-order doctrine applies to the denial of a motion to dismiss on the ground of foreign sovereign immunity.");

1

*Kilburn*, 376 F.3d at 1126 (finding that "[t]he denial of a motion to dismiss on the ground of sovereign immunity satisfies all three criteria [of the collateral order doctrine], and is therefore subject to interlocutory review").

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Did the district court err in holding that it had subject-matter jurisdiction over Petitioner-Appellee Peter A. Chiejina's claims against Nigeria pursuant to the FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6), where Mr. Chiejina was not a party to the underlying arbitration agreement?

2.     Did the district court err in holding that it had personal jurisdiction over Nigeria, a foreign state within the meaning of the FSIA, where service of process was not effected pursuant to the notice provision of the underlying contract between PICCOL and Nigeria?

## STATUTES AND OTHER AUTHORITIES

Pertinent statutes and other authorities are set forth in the addendum to this brief.

## **STATEMENT OF THE CASE**

This appeal arises from an action to confirm a foreign arbitration award issued in Nigeria in favor of a Nigerian limited liability company and against the Federal Republic of Nigeria. The underlying Nigerian arbitral award—denominated in Nigerian naira—results from a contract dispute between Nigeria and PICCOL that provided for the construction of a gully erosion control system in Nigeria in exchange for payment in Nigerian naira. The dispute has no connection to the United States.

Nevertheless, Petitioners seek to confirm the arbitration award in U.S. courts in hopes of converting the award into U.S. dollars at cherry-picked advantageous U.S. exchange rates from more than a decade ago. If successful, Petitioners stand to recover a massive multi-million-dollar windfall based on nothing more than fluctuations in the value of the U.S. dollar relative to the Nigerian naira that have no relation to the dispute. And Petitioners' request is all the more improper because the district court lacks both subject-matter and personal jurisdiction under the FSIA.

## I.    **PICCOL Contracts With Nigeria To Construct Gully Erosion Controls**

For decades, Nigeria has battled an environmental crisis caused by gully erosion. As part of Nigeria's approach to combat this crisis, in the early 2000s, Nigeria's National Committee on Ecological Problems solicited bids for the construction of gully erosion control structures throughout Nigeria. PICCOL bid

3

and won one such project and on April 20, 2005, Nigeria and PICCOL entered into a contract for the construction of gully erosion control structures in Nigeria's Imo State ("Agreement").  JA__[Agreement 1].

The Agreement was signed on Nigeria's behalf by Col. Musa Mohammed (Rtd), Honourable Minister of Inter-Governmental Affairs, Special Duties & Youth Dev./Chairman, National Committee on Ecological Problems.  JA__, __[Agreement 3, 18].  Mr. Chiejina signed the Agreement on PICCOL's behalf, in his capacity as PICCOL's Managing Director.  JA__, __[Agreement 3, 19].

The Agreement required PICCOL to construct certain gully erosion control structures over the course of 52 weeks for a fixed sum of ₦255,898,518.75.  JA__, __[Agreement §§ 1.1, 11].  Nigeria advanced PICCOL ₦63,974,629.69 prior to work commencing.  *See* JA__[Agreement § 2.0(iii)].  The Agreement provided that subsequent payments were contingent on certification by an independent consultant that PICCOL had completed certain "stages" of the agreed work.  JA__[Agreement § 2.0].  Nigeria's payments were to be made "with minimal delay." JA__[Agreement § 19.0(i)].  All sums due under the Agreement were to "be paid in Nigerian Naira."  JA__[Agreement § 2.0(i)].

The Agreement contained a mandatory arbitration clause providing as follows:

> Any dispute, controversy or claim arising out of or relating to this contract or the breach, termination or invalidity thereof, shall be settled

by arbitration at the Regional Centre for International Commercial Arbitration, Lagos, under the applicable Arbitration Rules in the schedule to the Arbitration and Conciliation Act Cap. 19 Laws of the Federation of Nigeria 1990.

JA__[Agreement § 18].  The Agreement further provided that the parties could only demand arbitration under this Agreement if (i) the parties first referred the dispute to the Director of Federal Public Works in Nigeria's Ministry of Works and Housing (the "Engineer"); and (ii) either PICCOL or Nigeria was "dissatisfied" with the Engineer's decision or the Engineer failed to timely provide a decision. JA__[Agreement § 66].

The Agreement also contained a notice provision that governed written correspondences between PICCOL and Nigeria.  Specifically, the notice provision provided:

Any notice, authorisation, information, instruction and correspondence required or authorised by this Agreement to be given by either party to the other shall be sent by registered post to the other party at the address set forth below or to such other address as either party shall notify the other in writing.

JA__[Agreement § 27].  With respect to Nigeria, PICCOL was required to send all such written correspondences to Nigeria's Ecological Fund Office at:

The Presidency, Ecological Fund Office,
Hon. Minister for Intergovernmental Affairs,
    Special Duties & Youth Development,
New Federal Secretariat Complex,
Phase II, Bulet Building, Abuja.

JA__[Agreement § 27].

5

## II.    PICCOL And Nigeria Have A Dispute And Petitioners Demand Arbitration

During the course of PICCOL's work under the Agreement, a dispute arose as to whether Nigeria's practice of making interim payments to PICCOL within two to six months satisfied the "minimal delay" provision of the Agreement.  JA__–__[Award 6–7].

Approximately seven years later, on March 26, 2014, PICCOL sent Nigeria a notice of arbitration, alleging Nigeria breached the Agreement by purportedly failing to make timely payments.  JA__[Award 12].  PICCOL did not refer the dispute to the Engineer before demanding arbitration, as required by the Agreement.  *See generally* JA__[Award].  PICCOL also failed to submit the arbitration to RCICAL, as required by the Agreement.  *See supra* 4–5 (citing JA__[Agreement § 18]).  The Petitioners instead initiated arbitration before the Abuja Multi Door Court House ("AMDCH") on July 1, 2014.  JA__[Award 12].  AMDCH dismissed that proceeding because it did not have jurisdiction over the dispute under Section 18 of the Agreement.  JA__[Award 12].

More than two years later, on August 3, 2016, Petitioners filed an arbitration demand with RCICAL, without providing Nigeria with a new Notice of Arbitration.  *See* JA__–__[Award 12–13].  Mr. Chiejina purported to join PICCOL as a claimant in both proceedings, even though he was not a party to the Agreement or the

arbitration provision therein. *See* JA__, __[Award 5, 12]. In the arbitration demand, Petitioners sought damages of more than ₦490,000,000. JA__–__[Award 20–22].

The RCICAL arbitration proceeded for approximately two more years before the arbiter issued its award. On June 7, 2019, the arbiter awarded Petitioners damages in the amount of ₦330,102,551.94 but denied Mr. Chiejina's claims for individual damages. *See* JA__–__[Award 98–111]. The award denominates the amount of PICCOL's damages in naira, just as PICCOL requested in its arbitration demand and bargained for in the Agreement. JA__–__[Award 116–18].

## III. Petitioners Seek To Confirm The Award In The United States

Two years after the award was issued, and in the midst of protracted settlement negotiations, PICCOL and Mr. Chiejina suddenly filed their Petition with the district court on August 24, 2021. JA__[Pet.]. The Petition seeks not only to have the district court confirm the award, but also to convert the award to U.S. dollars using advantageous conversion rates dating as far back as March 2010—nearly a decade before the award was issued. *Id.*

Petitioners did not send notice of the Petition or attempt to serve Nigeria through the Ecological Fund Office, as provided in the Agreement. Instead, on September 30, 2021, Petitioners' attorney filed a declaration, purporting to have served Nigeria by having the district court Clerk's Office mail a summons, notice of suit, and a copy of the Petition, among other documents to Nigeria's Minister of

Foreign Affairs in Abuja, Nigeria. JA__, __[Return of Service; Ex. 1 to Return of Service].

The Petition admits that Nigeria is a foreign state under the FSIA. JA__[Pet. 2]. The Petition nevertheless asserts that the district court had subject-matter matter jurisdiction over the action under 28 U.S.C. § 1605(a)(6)—the FSIA's so-called "arbitration exception"—or, in the alternative, under 28 U.S.C. § 1605(a)(1)—the implied waiver exception to foreign sovereign immunity—as a result of Nigeria being a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). Mem. of Law Supp. Pet. 3–14; Mem. Opp'n MTD ("Opp'n") 16–20.

On February 9, 2022, Nigeria moved to dismiss the Petition under Rules 12(b)(1), 12(b)(2), and 12(b)(5) of the Federal Rules of Civil Procedure, arguing that the district court lacked personal jurisdiction over Nigeria and subject-matter jurisdiction over the action under the FSIA. JA__[Mot. Dismiss ("MTD")]; Mem. of Law Supp. MTD ("Mem.") 6–13. Specifically, Nigeria asserted that the court lacked personal jurisdiction over Nigeria under the FSIA because Petitioners failed to serve Nigeria in accordance with the special arrangement for service set forth in the Agreement, as required by the FSIA (28 U.S.C. § 1608(a)). Nigeria further argued that the district court lacked subject matter jurisdiction because (i) the FSIA's arbitration exception does not apply to the claims by Mr. Chiejina's because Mr.

Chiejina is not a party to any arbitration agreement with Nigeria; and (ii) Nigeria did not waive its foreign sovereign immunity merely by being a signatory to the New York Convention. Mem. 10–13.

On February 25, 2022, Petitioners filed an opposition to Nigeria's motion to dismiss. Opp'n. In their brief, Petitioners did not dispute that an "agreement to arbitrate" must exist for the arbitration exception to apply. Opp'n 10. Nor did they identify any purported arbitration agreement between Nigeria and Mr. Chiejina. Opp'n 10–15. To the contrary, Petitioners freely conceded that Mr. Chiejina was not a party to any arbitration agreement with Nigeria. Opp'n 2, 10.

Regarding personal jurisdiction and service, Petitioners also did not dispute that, if a special arrangement for service of process existed, Petitioners were obligated to use that special arrangement to properly serve Nigeria under § 1608(a)(1) and, thus, to establish personal jurisdiction. Opp'n 4. Instead, Petitioners argued that the notice provision in the Agreement did not qualify as a special arrangement for service of process. Opp'n 4.

On August 24, 2022, the district court entered its Memorandum Opinion and Order denying Nigeria's motion to dismiss. JA__, __[Op.; Order]. The district court erroneously held that the notice requirement set forth in the Agreement was not a "special arrangement" for service under § 1608(a)(1), such that Petitioners were not required to serve Nigeria through that arrangement before attempting service

9

through the clerk of court to the head of the ministry of foreign affairs, under 28 U.S.C. § 1608(a)(3). On that incorrect basis, the district court held that it had personal jurisdiction over Nigeria under the FSIA. Regarding subject-matter jurisdiction, the district court did not consider Petitioners' waiver argument and instead held that it had subject matter jurisdiction over both Petitioners' claims under the FSIA's arbitration exception, despite finding that Mr. Chiejina was not a party to the arbitration agreement with Nigeria. JA__[Op. 8].

Nigeria filed its notice of appeal from the district court's decision on October 21, 2022. JA__[Notice of Appeal].

## SUMMARY OF ARGUMENT

The FSIA is the sole basis for obtaining both personal and subject-matter jurisdiction over a foreign state like Nigeria. Under the FSIA, foreign states are presumptively immune from jurisdiction in United States courts. Unless one of the FSIA's enumerated exceptions applies, subject-matter jurisdiction is lacking and the case must be dismissed. The FSIA's arbitration exception requires the existence of an arbitration agreement between the parties. Petitioners conceded below that there is no agreement to arbitrate between Nigeria and Mr. Chiejina. The arbitration exception therefore cannot apply to Mr. Chiejina's claims against Nigeria and, as a result, this Court should reverse the district court and dismiss Mr. Chiejina's claims for lack of subject-matter jurisdiction.

Personal jurisdiction under the FSIA requires an applicable exception to foreign sovereign immunity plus service of process in accordance with the FSIA's service of process requirements set forth in 28 U.S.C. § 1608(a). Section 1608(a) provides four methods for serving a foreign state. These methods are hierarchical, meaning Petitioners must comply with the provisions in descending order. The first method is service in accordance with a "special arrangement for service between the plaintiff and the foreign state[.]" § 1608(a)(1). Such an arrangement exists here in the Agreement that is the subject of the underlying award as well as Petitioners' purported basis for FSIA jurisdiction. Specifically, the notice provision of the Agreement requires PICCOL to serve any notice, information, instruction, or correspondence "required *or authorised*" by the Agreement on Nigeria via registered post at a specified address. JA__[Agreement § 27] (emphasis added). Petitioners did not attempt service in accordance with the terms of the notice provision as required by the FSIA, and instead purported to serve Nigeria under the third method listed in § 1608(a). Petitioners' purported service was therefore improper and the district court should have dismissed the Petition for lack of personal jurisdiction.

## STANDARD OF REVIEW

This Court "review[s] de novo a district court's denial of a motion to dismiss on sovereign immunity grounds." *Kirkham v. Societe Air France*, 429 F.3d 288, 291

(D.C. Cir. 2005); *see also LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021) (same).

## ARGUMENT

## I. THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION OVER MR. CHIEJINA'S CLAIMS

The arbitration exception to sovereign immunity does not apply to Mr. Chiejina because he is not a party to any arbitration agreement with Nigeria. As a result, there is no subject-matter jurisdiction over the claims by Mr. Chiejina and such claims must be dismissed.

The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). And "a foreign state is presumptively immune from the jurisdiction of United States courts[] unless a specified exception applies." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). To overcome this presumption, the plaintiff "bears the initial burden of supporting its claim that [an] FSIA exception applies." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015). If the plaintiff cannot establish an exception to immunity applies, then there is no subject-matter jurisdiction. *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 34 (D.C. Cir. 2014) ("[I]f no exception applies, the district court has no jurisdiction.") *abrogated on other grounds by Rosenkrantz v. Inter-Am. Dev. Bank*, 35 F.4th 854, 863 (D.C. Cir. 2022).

12

The FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6), is the only exception to immunity at issue in this appeal.  And it is limited to actions "to confirm an award made pursuant to . . . an agreement to arbitrate" where "the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6).

For the arbitration exception to apply, a plaintiff must demonstrate, as a "purely factual predicate," the existence of "an arbitration agreement between the foreign state and a private party."  *Chevron*, 795 F.3d at 204; *P&ID I*, 962 F.3d at 583.  Courts regularly dismiss petitions to confirm an arbitration award for lack of subject-matter jurisdiction where the petitioner cannot demonstrate that a foreign state agreed to arbitrate with a private party.  *See, e.g.*, *First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 756 (5th Cir. 2012) (affirming dismissal for lack of subject-matter jurisdiction where arbitration exception did not apply because the "PRC was not . . . a party to the arbitration agreement"); *see also Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 50 (2d Cir. 2021) (vacating and remanding with instructions to dismiss where "the Republic was not a party to the underlying arbitration" for which the arbitration exception was sought).

This Circuit is clear that, when analyzing an exception to immunity such as the arbitration exception, courts must make "FSIA immunity determinations on a

claim-by-claim basis." *Simon v. Republic of Hungary*, <u>812 F.3d 127, 141</u> (D.C. Cir. <u>2016</u>) (reviewing exception to immunity of a foreign state for each of the claims brought by fourteen different plaintiffs). Thus, because there are two Petitioners in this action—Mr. Chiejina and PICCOL—the district court should have analyzed whether the arbitration exception applied for each Petitioner. *See id.* at 141–42. The district court erred by analyzing the arbitration exception only as to PICCOL and not as to Mr. Chiejina. *See* JA__[Op. 8] ("I find that petitioners have met their burden to establish that the FSIA's arbitration exception applies by producing the arbitration agreement between Nigeria and PICCOL.").

Petitioners have failed to carry their burden that the arbitration exception applies as to Mr. Chiejina's claim. The only arbitration agreement Petitioners proffer is contained within the Agreement, which, in Petitioners' own words, is "***between Nigeria and PICCOL***." JA__[Pet. 2] (emphasis added). Indeed, the terms of the Agreement expressly provide that it is a contract between PICCOL and Nigeria, and no other parties. JA__[Agreement 1] (stating the Agreement is "between the Federal Government of Nigeria and Messrs. PICCOL Nigeria Limited"). The district court acknowledged Mr. Chiejina was not a party to the arbitration agreement, observing, "***on its face, the Contract's arbitration agreement does not include Chiejina***." JA__[Op. 8] (emphasis added). The arbitration exception, therefore, cannot apply to Mr. Chiejina and there is no jurisdiction over

14

the Petition insofar as Mr. Chiejina is a Petitioner bringing his own claim for confirmation. *See First Inv. Corp.*, 703 F.3d at 756 (5th Cir. 2012); *Gater Assets Ltd.*, 2 F.4th at 53–54; *see also Simon*, 812 F.3d at 141 (reviewing exception to foreign sovereign immunity on a claim-by-claim basis).

Given these undisputed facts—confirmed by the district court's own findings—binding circuit precedent requires dismissal of Mr. Chiejina's claims because they lack the "purely factual predicate" of "the existence of an arbitration agreement." *Chevron*, 795 F.3d at 204. The district court thus committed legal error by holding that the absence of an arbitration agreement with Mr. Chiejina went to the merits of his claim, rather than the district court's (lack of) jurisdiction under the FSIA. The district court's "doubts" about whether Mr. Chiejina may avail himself of the arbitration agreement between PICCOL and Nigeria (because Mr. Chiejina "is not a signatory to the Contract containing the arbitration provision"), JA__[Op. 9], only further establish that Petitioners failed to "bear[] their initial burden" of demonstrating an arbitration agreement between Mr. Chiejina and Nigeria. *Chevron*, 795 F.3d at 204.

The district court reached its erroneous conclusion by misreading this Court's decision in *Chevron*. Specifically, the district court cites a portion of the *Chevron* decision that held a question of arbitrability—namely, whether the subject matter of Chevron's claims was covered by the arbitration agreement at issue—was not a

15

jurisdictional question and instead went to the merits of whether the award should be confirmed.  JA__[Op. 9] (citing *Chevron*, <u>795 F.3d at 205</u>).  Yet the district court overlooked the portion of the decision that considered and decided whether a relevant arbitration even existed in the first place.  Indeed, the *Chevron* decision **held that an arbitration agreement existed between Chevron and Ecuador** and "[t]he FSIA therefore allows federal courts to exercise jurisdiction over Ecuador in order to consider an action to confirm or enforce the award."  *Chevron*, <u>795 F.3d at 206</u>.  Only after that initial jurisdictional question of the existence of an arbitration agreement between the parties was answered in the affirmative did the court go on to consider the merits question of whether each of Chevron's claims fell within that arbitration agreement.

The other cases the district court relied upon are similarly inapposite.  Indeed, in each case, the petitioner had carried its initial burden of showing the existence of an arbitration agreement and the respondent was only challenging the agreement's validity or scope.  For example, in *LLC SPC Stileks*, there was never a question about whether an arbitration agreement existed.  <u>985 F.3d at 877</u>–79.  Rather, the only question was whether the petitioner's claims fell within the scope of the agreement.  *See id.* at 877–78 (considering argument that "[a]lthough the [agreement] may establish that Moldova agreed to arbitrate certain disputes, it does not prove that it agreed to arbitrate this *particular* dispute" (emphasis in original)).  Likewise, *Balkan*

*Energy Ltd. v. Republic of Ghana*, is inapposite to the issue Nigeria raises on appeal under the arbitration exception. 302 F. Supp. 3d 144 (D.D.C. 2018). That case concerned a petition to enforce an arbitration award brought by an assignee of the entity who had an arbitration agreement with the foreign state. *See Balkan Energy*, 302 F. Supp. 3d at 146. There was no dispute about the existence of an arbitration agreement. *See id.* The district court's analysis, therefore, was misguided.

In short, there is no jurisdiction over the claims brought by Mr. Chiejina. This Court should reverse the district court's order and remand with instructions to dismiss Mr. Chiejina from the action for lack of subject-matter jurisdiction.

## II.    THE DISTRICT COURT LACKED PERSONAL JURISDICTION OVER NIGERIA

The Petition also should have been dismissed for lack of personal jurisdiction because Petitioners did not serve Nigeria in accordance with the FSIA's requirements for service of process. Under the FSIA, "proper service is a prerequisite to the assertion of personal jurisdiction over" a foreign state. *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 69 (D.D.C. 2007); *see also* 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection *(a) where service has been made under section 1608 of this title*." (emphasis added)).

Section 1608(a) of the FSIA sets forth the exclusive procedures for service of process on foreign states, including the order in which they must be attempted.

17

While § 1608(a) provides four permissible methods of service, they are listed hierarchically, in descending order of preference. *Democratic Republic of Congo v. FG Hemisphere Assocs., LLC*, 508 F.3d 1062, 1063 (D.C. Cir. 2007) ("28 U.S.C. § 1608(a) provides for service . . . upon a foreign state by four alternative means, each . . . available only if the previously enumerated options are in some way foreclosed."). In other words, "[a] plaintiff does not have the privilege to choose from among these four methods." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 101 (D.D.C. 2005). Moreover, a plaintiff is required to "strict[ly] adhere[] to the terms of 1608(a)," *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994), and failure to do so mandates dismissal. *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019) (requiring strict, formal adherence to § 1608(a)(3) because "there are circumstances in which the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction"); *Mani Kumari Sabbithi v. Major Waleed KH N.S. Al Saleh*, 623 F. Supp. 2d 93, 98 (D.D.C. 2009) ("The plain language of § 1608(a) makes clear that the FSIA lists the methods in descending order of preference . . . [l]eniency in this case would disorder the statutory scheme.").

Here, Petitioners failed to adhere strictly to the terms of § 1608(a) of the FSIA. Petitioners attempted to serve Nigeria's Minister of Foreign Affairs pursuant to the third method of service listed in § 1608(a), which permits service upon "the head of

18

the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3); *see* JA__[Return of Service ¶ 2] (claiming to have effected service of process on Nigeria by having the Clerk's Office mail the required process to Nigeria's Minister of Foreign Affairs). This method of service, however, was improper because Petitioners could have and should have served Nigeria pursuant to section 1608(a)'s first method of service, which allows service "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state[.]" 28 U.S.C. § 1608(a)(1).

"[A] 'special arrangement for service' for purposes of § 1608(a)(1)" exists when there is "a contract provision specifying the method of providing notice" to the parties. *G.E. Transp. S.p.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 137 (D.D.C. 2010). Here, there are several provisions in the Agreement between PICCOL and Nigeria that required PICCOL to notify Nigeria's Ecological Fund Office of any disputes between the parties. First, Section 27 of the Agreement, entitled "NOTICES," required PICCOL to submit "any notice, authorisation, information, instruction and correspondence required or authorized by this Agreement" via "registered post" to:

> The Presidency, Ecological Fund Office,
> Hon. Minister for Intergovernmental Affairs,
>     Special Duties & Youth Development,
> New Federal Secretariat Complex,
> Phase II, Bulet Building, Abuja.

19

JA__[Agreement § 27]. Such a notice provision establishes a special arrangement for purposes of § 1608(a)(1). *See G.E. Transp.*, 693 F. Supp. 2d at 136–37 (finding a special arrangement for service where the contract between the parties included a notice provision); *Marlowe v. Argentine Naval Com.*, 604 F. Supp. 703, 704, 707–08 (D.D.C. 1985) (same); *Space Sys./Loral, Inc. v. Yuzhnoye Design Office*, 164 F. Supp. 2d 397, 402–03 (S.D.N.Y. 2001) (same).

Section 18 of the Agreement, entitled "ARBITRATION," reinforces the "special arrangement" created by Section 27. Specifically, Section 18 provides that any dispute "shall be settled by arbitration . . . under the applicable Arbitration Rules in the schedule of the Arbitration and Conciliation Act Cap. 19 Laws of the Federation of Nigeria 1990." JA__[Agreement § 18]. The Arbitration Rules, in turn, contain specific notice procedures that require notices be "physically delivered to the addressee or . . . place of business." JA__[Arbitration and Conciliation Act art. 2]. Read in unison with Section 27 of the Agreement, the "addressee" is the Ecological Fund Office. JA__, __[Agreement § 27; Arbitration and Conciliation Act art. 2]. It is undisputed that Petitioners never served or otherwise notified the Ecological Fund Office of this action, as required by the Agreement.

The district court wrongly held that the notice provision in Section 27 of the Agreement is not a "special arrangement" for service of process and, as a result concluded that Petitioners properly served Nigeria under § 1608(a)(1).

JA__[Op. 6]. This resulted from a mistaken belief that Section 27 does not apply to notice of a confirmation proceeding that arises from the Agreement and purports to base jurisdiction on the Agreement. *Id.* Specifically, the district court reasoned (incorrectly) that, because the notice provision references notices "required or authorized" by the Agreement, it could only be a special arrangement for service if the Agreement expressly addressed service of process in a U.S. court confirmation proceeding. *See* JA__[Op. 6]. Nothing in the Agreement or the district court's order supports that interpretation.

Initially, the notice provision in Section 27 of the Agreement broadly covers "*[a]ny* notice, authorization, information, instruction and correspondence ***required or authorised by this Agreement to be given by either party to the other***." JA__[Agreement § 27] (emphasis added). The term "authorized," as used in the Agreement, is broad and its plain meaning encompasses notices far beyond those specifically enumerated in the Agreement. Further, the Agreement plainly contemplates service of a petition to confirm an arbitration award by setting forth the parties' agreement to arbitrate. *See* JA__–__[Award 17–20] (analyzing whether the arbitration demand satisfied the Agreement's notice provision). Moreover, as noted, the award was issued pursuant to the Agreement and Petitioners purport to base jurisdiction in their confirmation proceeding on the Agreement. These facts

21

cannot be squared with the district court's conclusion that notice of the confirmation proceeding is somehow not "authorised" by the Agreement.

The cases cited by the district court also do not support its conclusion. JA__[Op. 6] (citing *Berkowitz v. Republic of Costa Rica*, 288 F. Supp. 3d 166, 173 (D.D.C. 2018); *Orange Middle East & Africa v. Republic of Equatorial Guinea*, 2016 WL 2894857, at *4 (D.D.C. May 18, 2016)). Unlike the broad notice provision here, the notice provisions at issue in those cases were narrowly crafted to cover only certain types of communications to the exclusion of service of process in the relevant proceedings. For example, in *Berkowitz*, the notice provision was expressly limited to "[n]otices and other documents in disputes under [Chapter 10]" of the agreement, meaning notice "in" investor-state arbitrations. 288 F. Supp. 3d at 173. The provision thus did not cover service of judicial documents in subsequent vacatur proceedings outside the arbitration. *See id.* Likewise, the notice provision at issue in *Orange Middle East & Africa*, was "restrictive" and applied only to notices "made under [the] Agreement" at issue. 2016 WL 2894857, at *4.

The policy objectives behind the FSIA also support the outcome presented by Nigeria. The primary objective of the policy of foreign sovereign immunity is to free foreign sovereigns "from trial and the attendant burdens of litigation." *P&ID I*, 962 F.3d at 584. For this reason, the Supreme Court has instructed that plaintiffs

must strictly adhere to the service requirements of the FSIA.  *See Republic of Sudan*, 139 S. Ct. at 1062.

Where, as here, a foreign state has specifically articulated a preferred method of service, that decision should be entitled to significant deference.  *Cf. Transaero, Inc.*, 30 F.3d at 154 (noting that foreign sovereigns often lack "a sophisticated knowledge of the United States legal system" and thus deserve heightened protection); *see also Republic of Sudan*, 139 S. Ct. at 1062 (requiring strict adherence to FSIA's service provisions as they "apply to a category of cases with sensitive diplomatic implications").  This policy decision is reflected in the very structure of § 1608(a):  Congress required a plaintiff first to attempt service pursuant to a foreign state's preferred method espoused in a "special arrangement" (§ 1608(a)(1)) or "an applicable international convention on service of judicial documents" (§ 1608(a)(2)) before falling back on the FSIA's alternative methods (§ 1608(a)(3)–(4)).

The cases cited by Petitioners in the district court—which each held ***in favor of the foreign state*** in declining to find a special arrangement—only confirm the district court's error here.  *See Berkowitz*, 288 F. Supp. 3d at 176 (dismissing petition with prejudice); *Hardy Expl. & Prod. (India), Inc. v. Gov't of India*, 219 F. Supp. 3d 50, 52 (D.D.C. 2016) (holding service of process on India was ineffective); *Orange Middle East & Africa*, 2016 WL 2894857, at *5 (dismissing petition); *Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 225 F. Supp. 3d 18, 24 (D.D.C

23

2014) (holding service of process on Nigeria was ineffective). Indeed, respect for the foreign sovereign's immunity was often a primary motivation. *See, e.g.*, *Orange Middle East & Africa*, 2016 WL 2894857, at *5 ("A Petition to enforce the ensuing arbitral award is another matter—one that must respect the sovereignty of Equatorial Guinea and conform to FSIA's prerequisites to jurisdiction in this Court."). Whereas each of the opinions cited by Petitioners rejected a finding of "special arrangement" in furtherance of vitally important sovereign interests protected by the FSIA, the district court here simply ignored Nigeria's interests in selecting its preferred method of service. By reading the Agreement's language too narrowly, the district court circumvented its plain meaning and, in doing so, undermined Nigeria's ability to adequately protect its interests based on the interpretive idiosyncrasy of a foreign legal system. As a result, the district court's decision authorized Petitioners to foist the burden of correctly routing service of the Petition onto Nigeria's Foreign Minister, vitiating the protections afforded Nigeria by the FSIA. *See P&ID I*, 962 F.3d at 584 (holding that a basic objective of the policy of foreign sovereign immunity is to free foreign sovereigns "from trial and the attendant burdens of litigation").

Petitioners were required to serve the summons and petition by registered post to the Ecological Fund Office. JA__[Agreement § 27]. They did not. As a result,

the district court lacked personal jurisdiction over Nigeria and this Court should reverse.

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the district court's order and remand with instructions to dismiss the Petition for lack of personal jurisdiction and/or to dismiss Mr. Chiejina as a Petitioner for lack of subject-matter jurisdiction.

Dated:     February 10, 2023
           Washington, DC

Respectfully submitted,

**WHITE & CASE**

 /s/ *Tara M. Lee*
Tara M. Lee (DC Bar No. 17902)
Scott Lerner* (DC Bar No. 1024964)
Susan L. Grace*
T.J. McElhinney* (DC Bar No. 1657817)
Helin C. Akcam*
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:   + 1 202 626 3600
Facsimile:    + 1 202 639 9355
tara.lee@whitecase.com
scott.lerner@whitecase.com
susan.grace@whitecase.com
tj.mcelhinney@whitecase.com
helin.akcam@whitecase.com

*Counsel for Respondent-Appellant
Federal Republic of Nigeria*

*Application to United States Court of
Appeals for the District of Columbia
Pending

25

## **<u>CERTIFICATE OF COMPLIANCE</u>**

This document complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This brief contains 5,960 words (as calculated by the automatic word count function of Microsoft Word), excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This document complies with the typeface requirements of Rule 32(a)(5)(A) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this document has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

**WHITE & CASE**

*/s/ Tara M. Lee*

Tara M. Lee (D.C. Bar No. 17902)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone: +1 202 626-3600
Facsimile: +1 202 639-9355
tara.lee@whitecase.com

*Counsel for Respondent-Appellant*
*Federal Republic of Nigeria*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2023, a true and correct copy of foregoing

document was served by electronic filing on the following counsel of record:

Theodore J. Folkman
Rubin & Rudman LLP
53 State Street
Boston, MA 02109
617-330-7135
tfolkman@rubinrudman.com

*/s/ Tara M. Lee*

Tara M. Lee (D.C. Bar No. 17902)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone: +1 202 626-3600
Facsimile: +1 202 639-9355
tara.lee@whitecase.com

*Counsel for Respondent-Appellant*
*Federal Republic of Nigeria*

# **STATUTORY ADDENDUM**

# TABLE OF CONTENTS

**Page**

28 U.S.C. § 1604 ..................................................................................... 3a

28 U.S.C. § 1605(a) ............................................................................... 3a

28 U.S.C. § 1608 ..................................................................................... 4a

mercial activity carried on by such state and having substantial contact with the United States.

(Added Pub. L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2892; amended Pub. L. 109–2, § 4(b)(2), Feb. 18, 2005, 119 Stat. 12.)

AMENDMENTS

2005—Subsec. (b)(3). Pub. L. 109–2 substituted ''(e)'' for ''(d)''.

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–2 applicable to any civil action commenced on or after Feb. 18, 2005, see section 9 of Pub. L. 109–2, set out as a note under section 1332 of this title.

EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## § 1604. Immunity of a foreign state from jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

(Added Pub. L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2892.)

REFERENCES IN TEXT

The time of enactment of this Act, referred to in text, probably means the time of enactment of Pub. L. 94–583, which was approved Oct. 21, 1976.

EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## § 1605. General exceptions to the jurisdictional immunity of a foreign state

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that

agency or instrumentality is engaged in a commercial activity in the United States;

(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

(b) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: *Provided*, That—

(1) notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

(2) notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in paragraph (1)

3a

18, a national of the United States may bring a claim against a foreign state in accordance with section 2333 of that title if the foreign state would not be immune under subsection (b).

(d) RULE OF CONSTRUCTION.—A foreign state shall not be subject to the jurisdiction of the courts of the United States under subsection (b) on the basis of an omission or a tortious act or acts that constitute mere negligence.

(Added Pub. L. 114–222, §3(a), Sept. 28, 2016, 130 Stat. 853.)

#### EFFECTIVE DATE

Section applicable to any civil action pending on, or commenced on or after, Sept. 28, 2016, and arising out of an injury to a person, property, or business on or after Sept. 11, 2001, see section 7 of Pub. L. 114–222, set out as an Effective Date of 2016 Amendment note under section 2333 of Title 18, Crimes and Criminal Procedure.

#### STAY OF ACTIONS PENDING STATE NEGOTIATIONS

Pub. L. 114–222, §5, Sept. 28, 2016, 130 Stat. 854, provided that:

"(a) EXCLUSIVE JURISDICTION.—The courts of the United States shall have exclusive jurisdiction in any action in which a foreign state is subject to the jurisdiction of a court of the United States under section 1605B of title 28, United States Code, as added by section 3(a) of this Act.

"(b) INTERVENTION.—The Attorney General may intervene in any action in which a foreign state is subject to the jurisdiction of a court of the United States under section 1605B of title 28, United States Code, as added by section 3(a) of this Act, for the purpose of seeking a stay of the civil action, in whole or in part.

"(c) STAY.—

"(1) IN GENERAL.—A court of the United States may stay a proceeding against a foreign state if the Secretary of State certifies that the United States is engaged in good faith discussions with the foreign state defendant concerning the resolution of the claims against the foreign state, or any other parties as to whom a stay of claims is sought.

"(2) DURATION.—

"(A) IN GENERAL.—A stay under this section may be granted for not more than 180 days.

"(B) EXTENSION.—

"(i) IN GENERAL.—The Attorney General may petition the court for an extension of the stay for additional 180-day periods.

"(ii) RECERTIFICATION.—A court shall grant an extension under clause (i) if the Secretary of State recertifies that the United States remains engaged in good faith discussions with the foreign state defendant concerning the resolution of the claims against the foreign state, or any other parties as to whom a stay of claims is sought."

## § 1606. Extent of liability

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2894; amended Pub. L. 105–277, div. A, §101(h) [title I, §117(b)], Oct. 21, 1998, 112 Stat. 2681–480, 2681–491; Pub. L. 106–386, div. C, §2002(g)(2), formerly §2002(f)(2), Oct. 28, 2000, 114 Stat. 1543, renumbered §2002(g)(2), Pub. L. 107–297, title II, §201(c)(3), Nov. 26, 2002, 116 Stat. 2337.)

#### AMENDMENTS

2000—Pub. L. 106–386, §2002(g)(2), formerly §2002(f)(2), as renumbered by Pub. L. 107–297, which directed repeal of section 101(h) [title I, §117(b)] of div. A of Pub. L. 105–277, was executed by striking out ", except any action under section 1605(a)(7) or 1610(f)" after "punitive damages", to reflect the probable intent of Congress. See 1998 Amendment note below.

1998—Pub. L. 105–277 inserted ", except any action under section 1605(a)(7) or 1610(f)" after "punitive damages".

#### EFFECTIVE DATE OF 1998 AMENDMENT

Amendment by Pub. L. 105–277 applicable to any claim for which a foreign state is not immune under section 1605(a)(7) of this title arising before, on, or after Oct. 21, 1998, see section 101(h) [title I, §117(c)] of Pub. L. 105–277, set out as a note under section 1610 of this title.

#### EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## § 1607. Counterclaims

In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim—

(a) for which a foreign state would not be entitled to immunity under section 1605 or 1605A of this chapter had such claim been brought in a separate action against the foreign state; or

(b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; or

(c) to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state.

(Added Pub. L. 94–583, §4(a), Oct. 21, 1976, 90 Stat. 2894; amended Pub. L. 110–181, div. A, title X, §1083(b)(2), Jan. 28, 2008, 122 Stat. 341.)

#### AMENDMENTS

2008—Subsec. (a). Pub. L. 110–181 inserted "or 1605A" after "section 1605".

#### EFFECTIVE DATE OF 2008 AMENDMENT

For applicability of amendments by Pub. L. 110–181 to pending cases, see section 1083(c) of Pub. L. 110–181, set out as an Effective Date note under section 1605A of this title.

#### EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## § 1608. Service; time to answer; default

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special ar-

rangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

(c) Service shall be deemed to have been made—

(1) in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and

(2) in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

(d) In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.

(e) No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

(Added Pub. L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2894.)

EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## § 1609. Immunity from attachment and execution of property of a foreign state

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

(Added Pub. L. 94–583, § 4(a), Oct. 21, 1976, 90 Stat. 2895.)

REFERENCES IN TEXT

The time of enactment of this Act, referred to in text, probably means the time of enactment of Pub. L. 94–583, which was approved Oct. 21, 1976.

EFFECTIVE DATE

Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94–583, set out as a note under section 1602 of this title.

## § 1610. Exceptions to the immunity from attachment or execution

(a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—

(1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or

(2) the property is or was used for the commercial activity upon which the claim is based, or

(3) the execution relates to a judgment establishing rights in property which has been taken