ORAL ARGUMENT NOT YET SCHEDULED
No. 22-7146

———

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**PETER A. CHIEJINA and PICCOL NIGERIA, LTD.,**
Petitioners-Appellees,

vs.

**FEDERAL REPUBLIC OF NIGERIA,**
Respondent-Appellant

———

On Appeal from an Order of the
United States District Court for the District of Columbia
Denying a Motion to Dismiss

———

**BRIEF OF THE APPELLEES,
PETER A. CHIEJINA AND PICCOL NIGERIA, LTD.**

———

Theodore J. Folkman
RUBIN & RUDMAN, LLP
53 State Street
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com

*Appellees' Counsel*

March 31, 2023

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A. All parties, intervenors, and amici appearing before the district court and in this court are listed in the Brief for the Appellant. PICCOL Nigeria, Ltd. states that it has no parent company and that no publicly held corporation owns 10% or more of its stock.

B. References to the ruling at issue appear in the Brief for the Appellant.

C. There are no related cases.

## TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ...................i

Table of Authorities...................................................iv

Glossary...............................................................ix

Jurisdictional Statement ..............................................1

Statement of Issues Presented for Review...............................1

Statutes and Regulations...............................................2

Statement of the Case.................................................2

Summary of the Argument...............................................6

   A.   The Court Had Subject-Matter Jurisdiction.....................6

   B.   Service of Process was Proper. .........................8

Argument..............................................................10

   A.   The District Court Had Subject-Matter Jurisdiction Because the Arbitration and Waiver Exceptions to FSIA Immunity Applies. ..............................................10

      1.   The Arbitration Exception Applies.............................10

         a.   The Arbitration Exception Applies Even When the Foreign State May Have a Merits Defense That the State Had Not Agreed to Arbitrate Disputes with A Particular Award Creditor. ............................................12

         b.   The FSIA's Plain Text Shows That an Agreement with Any Private Party Is Sufficient If the Award Is Made Under That Agreement. ................................16

         c.   Because There Was Only One Claim In The Arbitration, the Court Should Not Dismiss Mr. Chiejina.................................................18

      2.   The Waiver Exception Applies. ..................................19

   B.   Service of Process Was Proper, Because the Notice Provision in The Contract Is Not a "Special Arrangement for Service" Within the Meaning of the FSIA. ..........................24

1.    The FSIA's Methods of Service Are Mandatory, and the
Foreign State's Preferences Are Irrelevant.........................25

2.    Section 1608(a)(1) Must Be Construed Narrowly. ......28

3.    Only All-Encompassing Notice Provisions Are Special
Arrangements for Service of Process, and the Notice
Provision in the Contract Was Not All-Encompassing. ...... 31

4.    If Service Was Improper, the Court Should Not Dismiss
the Case. ........................................................................37

Conclusion ................................................................................38

Certificate of Compliance ........................................................39

Addendum................................................................................ A1

# TABLE OF AUTHORITIES

## Cases

*101–115 W. 116th St. Corp. v. Consulate Gen. of the Republic of Sen.,* 2023 N.Y. Misc. LEXIS 858 (N.Y. Sup. Ct. Feb. 27, 2023) ..................................................................................33

*Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic,* 2013 U.S. Dist. LEXIS 199771 (S.D. Fla. Jun. 10, 2013)......27

*Balkan Energy Ltd. v. Republic of Ghana,* 302 F. Supp. 3d 144 (D.D.C. 2018) ....................................................................... 17

*Barot v. Embassy of Zam.,* 785 F.3d 26 (D.C. Cir. 2015) ..... 25, 37

*Berdakin v. Consulado de La Republica de El Salvador,* 912 F. Supp. 458 (C.D. Cal. 1995) ...................................................33

* *Berkowitz v. Republic of Costa Rica,* 288 F. Supp. 3d 166 (D.D.C. 2018) ........................................................30, 33, 35

* *Chevron Corp. v. Republic of Ecuador,* 795 F.3d 200, 204-05 (D.C. Cir. 2015)................................11, 13, 14, 15, 16

* *Citizens for Responsibility & Ethics in Wash. v. FEC,* 971 F.3d 340 (D.C. Cir. 2020)............................................................ 17

*Commissions Import Export S.A. v. Republic of the Congo,* 2015 U.S. Dist. LEXIS 192785 (D.D.C. Jul. 6, 2015).................. 29

*Creighton Ltd. v. Gov't of Qatar,* 181 F.3d 118 (D.C. Cir. 1999)20, 24

Authorities upon which we chiefly rely are marked with asterisks.

iv

*Crumpacker v. Ciraolo-Klepper,* 715 Fed. App'x 18 (D.C. Cir. 2018)...................................................................................28

*Diag Human, S.E. v. Czech Republic Ministry of Health,* 64 F. Supp. 3d 22 (D.D.C. 2014), *rev'd,* 824 F.3d 131 (D.C. Cir. 2016) ......................................................22, 23, 24

*Diag Human, S.E. v. Czech Republic Ministry of Health,* 824 F.3d 131 (D.C. Cir. 2016) ................................................23

* *Enron Nigeria Power Holding, Ltd. v. Federal Republic of Nigeria,* 225 F. Supp. 3d 18 (D.D.C. 2014)............ 30, 31, 33

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.,* 703 F.3d 742 (5th Cir. 2012) ......................................... 15, 17

*Foremost-McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438 (D.C. Cir. 1990) ................................................23, 24

*G.E. Transp. S.p.A. v. Republic of Albania,* 693 F. Supp. 2d 132 (D.D.C. 2010) ....................................................................34

*Gater Assets Ltd. v. AO Moldovagaz,* 2 F.4th 42 (2d Cir. 2021) ............................................................. 15, 17

* *Hardy Expl. & Prod. (India) Inc. v. Gov't of India,* 219 F. Supp. 3d 50 (D.D.C. 2016) ......................32, 33, 34, 35

*Int'l Rd. Fed'n v. Embassy of Dem. Republic of the Congo,* 131 F. Supp. 2d 248 (D.D.C. 2001)..................................32, 35

*Larson v. Northrop Corp.,* 21 F.3d 1164 (D.C. Cir. 1994) ..........19

* *LLC SPC Stileks v. Republic of Moldova,* 985 F.3d 871 (D.C. Cir. 2021) ................................................. 13, 14, 15, 16

*Lovati v. Bolivarian Republic of Venez.,* 2020 U.S. Dist. LEXIS
    211458 (S.D.N.Y. Nov. 11, 2020) .........................................27

*Marlowe v. Argentine Naval Comm'n,* 604 F. Supp. 703
    (D.D.C. 1985) ........................................................... 31, 32, 35

* *Orange Middle East & Afr. v. Republic of Equatorial Guinea,*
    2016 U.S. Dist. LEXIS 65147
    (D.D.C. May 18, 2016)...............................................33, 34, 35

*Partridge v. Presley,* 189 F.2d 645 (D.C. Cir. 1951) ..................28

*Process & Indus. Dev. Ltd. v. Federal Republic of Nigeria,*
    27 F.4th 771 (D.C. Cir. 2022) .......................................20, 27

*Process & Indus. Devs., Ltd. v. Federal Republic of Nigeria,* 962
    F.3d 576 (D.C. Cir. 2020) ....................................................30

* *Republic of Sudan v. Harrison,* 139 S. Ct. 1048 (2019) ....25, 29

*Saunders Real Estate Corp. v. Consulate Gen. of Greece,*
    1995 U.S. Dist. LEXIS 14893 (D. Mass. Aug. 11, 1995) .......32

* *Seetransport Wiking Trader Schiffarhtsgesellschaft mbH v.
    Navimplex Centrala Navala,* 989 F.2d 572
    (2d Cir. 1993) ...............................................................20, 21

*Simon v. Republic of Hungary,* 812 F.3d 127
    (D.C. Cir. 2016) ........................................................7, 18, 19

*Sky Petroleum, Inc. v. Ministry of Econ., Trade & Energy of Alb.,*
    2012 U.S. Dist. LEXIS 193304 (W.D. Tex. Jan. 20, 2012) ...32

*Space Sys./Loral, Inc. v. Yuzhnoye Design Office,* 164 F. Supp. 2d
    397 (S.D.N.Y. 2001) .........................................................32

*Tatneft v. Ukr.,* 771 Fed. App'x 9 (D.C. Cir. 2019).............20, 24

*Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148
   (D.C. Cir. 1994) ............................................................25, 26

*Water Splash, Inc. v. Menon,* 581 U.S. 271 (2017) ...................36

*Yi Tai Shao v. Roberts,* 2019 U.S. App. LEXIS 33895
   (D.C. Cir. Nov. 13, 2019)......................................................28

## Statutes

9 U.S.C. § 207........................................................................ 12

28 U.S.C. § 1330(a) ................................................................. 1

28 U.S.C. § 1605(a)(1).................................................... 1, 5, 6

28 U.S.C. § 1605(a)(3) ........................................................... 19

28 U.S.C. § 1605(a)(6) ................................1, 5, 6, 7, 10, 11, 16

28 U.S.C. § 1608(a).................................................................25

28 U.S.C. § 1608(a)(1)............................ 1, 9, 24, 25, 29, 30, 36

28 U.S.C. § 1608(a)(2) ........................................................... 26

28 U.S.C. § 1608(a)(3) ..................................................5, 26, 29

## Treaties

United Nations Convention on the Recognition and Enforcement
   of Foreign Arbitral Awards, Jun. 10, 1958, 21 U.S.T. 2517,
   330 U.N.T.S. 38, art. I(1) ....................................................21

United Nations Convention on the Recognition and Enforcement
    of Foreign Arbitral Awards, Jun. 10, 1958, 21 U.S.T. 2517,
    330 U.N.T.S. 38, art. III ...................................................... 12

United Nations Convention on the Recognition and Enforcement
    of Foreign Arbitral Awards, Jun. 10, 1958, 21 U.S.T. 2517,
    330 U.N.T.S. 38, art. V ....................................................... 12

United Nations Convention on the Recognition and Enforcement
    of Foreign Arbitral Awards, Jun. 10, 1958, 21 U.S.T. 2517,
    330 U.N.T.S. 38, art. V(1)(c) ............................................... 12

## Other Authorities

*Black's Law Dictionary* (5th ed. 1979) ..................................... 17

Fed. R. Evid. 201(b)(2) ............................................................28

G.A. Res. 31/98, art. 21(1) (Dec. 15, 1976).............................. 12

*Merriam-Webster's Collegiate Dictionary* (10th ed. 2001) ........35

Nigeria Erosion and Watershed Management Project,
    *Environmental and Social Management Framework (ESMF)*
    *Executive Summary,* https://perma.cc/Z6E3-R2V3................2

*Oxford English Dictionary* (1971) ...........................................35

# GLOSSARY

| | |
|---|---|
| ADR | alternative dispute resolution |
| FCIArb | Fellow of the Chartered Institute of Arbitrators |
| FSIA | Foreign Sovereign Immunities Act |
| New York Convention | United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards |
| Nigeria | The Federal Republic of Nigeria |
| PICCOL | PICCOL Nigeria, Ltd. |
| RCICAL | Regional Centre for International Commercial Arbitration, Lagos |
| SAN | Senior Advocate of Nigeria |

## JURISDICTIONAL STATEMENT

This is a petition to confirm an arbitral award made under an agreement to arbitrate between Nigeria, a foreign state, and a private party, PICCOL Nigeria, Ltd. The award falls under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Jun. 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38. Nigeria is a party to the Convention, and therefore Nigeria has implicitly waived its immunity from suit. The waiver and arbitration exceptions to foreign sovereign immunity, 28 U.S.C. §§ 1605(a)(1) and (6), apply. The district court had jurisdiction under 28 U.S.C. § 1330(a).

The appellees agree with the appellant's statement on appellate jurisdiction.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Is Mr. Chiejina's claim within the arbitration exception to foreign sovereign immunity, 28 U.S.C. § 1605(a)(6)?

2.     In the alternative, is Mr. Chiejina's claim within the waiver exception to foreign sovereign immunity, 28 U.S.C. § 1605(a)(1)?

3.     Was service of process improper because the notice provision in the parties' contract is a "special arrangement for service" under 28 U.S.C. § 1608(a)(1)?

## STATUTES AND REGULATIONS

Except for the materials contained in the addendum to this brief, all applicable statutes, etc. are contained in the Brief for the Appellant.

## STATEMENT OF THE CASE

Gully erosion is a longstanding problem in southern Nigeria. It has a

> devastating effect on many peoples' lives and destroys essential infrastructure for economic development and poverty alleviation. Gully erosion contributes to environmental problems and damage estimated at over $100 million annually.

Nigeria Erosion and Watershed Management Project, *Environmental and Social Management Framework (ESMF) Executive Summary,* https://perma.cc/Z6E3-R2V3.

In 2006, Nigeria contracted with a small engineering firm, PICCOL Nigeria, Ltd., to construct gully erosion control structures in southern Nigeria. Col. Musa Mohammed, the Minister of Inter-Government Affairs, signed the contract for Nigeria. PICCOL's sole owner and managing director, Peter A. Chiejina, signed for the company. (A. 30-31). Mr. Chiejina is a Nigerian who has been a lawful permanent resident of the United States and lived in South Carolina since 2016.

The parties agreed to arbitrate disputes:

2

> Any dispute, controversy or claim arising out of or relating to
> this contract or the breach, termination or invalidity thereof,
> shall be settled by arbitration at the Regional Centre for In-
> ternational Commercial Arbitration, Lagos, under the appli-
> cable Arbitration Rules in the schedule to the Arbitration and
> Conciliation Act, Cap. 19 Law of the Federation of Nigeria,
> 1990.

(A. 25-26). They also agreed on a method to send each other no-
tices under the contract:

> Any notice, authorisation, information, instruction and cor-
> respondence required or authorised by this Agreement to be
> given by either party to the other shall be sent by registered
> post to the other party at the address set forth below or to
> such other address as either party shall notify the other in
> writing …

(A. 29).

Work on the one-year contract began in 2006. PICCOL and
Mr. Chiejina asserted that after a new president was elected in
2007, the government stopped paying contractors on federal pro-
jects (A. 41). They claimed the resulting delays in payment injured
them. Mr. Chiejina claimed that he had mortgaged his home to se-
cure a loan so PICCOL could afford to perform under the contract,
and that the delayed payments had left him unable to repay the
mortgage loan (A. 42).

PICCOL and Mr. Chiejina demanded arbitration in March
2014. They first brought their claim at the Abuja Multi Door Court

House, a Nigerian ADR provider. But the agreement to arbitrate specified RCICAL as the arbitral body. So in August 2016, PICCOL and Mr. Chiejina began again at RCICAL. (A. 47). RCICAL's director appointed the arbitrator, Dorothy Ufot, SAN, FCIArb, in October 2016. (A. 48).

Nigeria participated in the arbitration from start to finish. After filing its statement of defense, Nigeria sought to dismiss the claim for lack of jurisdiction and on the ground that it was time-barred: Nigeria argued that PICCOL and Mr. Chiejina's notice of arbitration had not been properly served and did not satisfy the arbitral rules. The arbitrator rejected these arguments, finding that the notice of arbitration was valid. (A. 54). In any event, she found, Nigeria did not object to the arbitrator's jurisdiction until too late: Article 24.4 of the arbitral rules required Nigeria to object no later than the date of its statement of defense, but Nigeria objected only fourteen days later. (A. 55). The arbitrator also rejected Nigeria's timeliness argument on the merits. (A. 54-55). Nigeria did not raise Mr. Chiejina's presence in the case as an issue at any time during the arbitration.

Following an evidentiary hearing (A. 57), the arbitrator issued her award in June 2019. She awarded damages after finding that Nigeria had failed to pay an interim payment certificate in full.

She awarded additional damages because Nigeria had delayed payments on other interim payment certificates. She also awarded damages for the cost of equipment idle time and for lost profits. Finally, she awarded costs of the arbitration and interest. (A. 79-81). The award required Nigeria to pay the damages to "the Claimants" (plural in original), that is, to PICCOL and Mr. Chiejina, within twenty-one days. (*Id.*). But although the award is final, although Nigeria never asked a Nigerian court to set it aside, and although almost four years have passed, Nigeria has paid nothing. (A. 9).

PICCOL and Mr. Chiejina petitioned to confirm the award on August 24, 2021. They invoked the FSIA's waiver and arbitration exceptions, 28 U.S.C. §§ 1605(a)(1) and (6). (A. 6). The clerk dispatched the summons, petition, and notice of suit to the Nigerian Minister of Foreign Affairs, as provided in 28 U.S.C. § 1608(a)(3). (A. 82). The Minister received the papers on September 28, 2021. (A. 84).

Nigeria moved to dismiss. (A. 89). It argued that the court lacked subject-matter jurisdiction because no exception to its foreign sovereign immunity applied, and that the court lacked personal jurisdiction because the parties had a special arrangement for service that Mr. Chiejina and PICCOL ignored.

The district court easily rejected Nigeria's service argument, finding no support for Nigeria's claim that an agreement governing only notices under the contract also governs service of process in an action to confirm an award in a foreign court.

On immunity, the district court recognized that Nigeria was dressing up a merits argument—the award should not be recognized because it exceeds the scope of the submission to arbitration—as a jurisdictional argument. It held that the arbitration exception applied. It did not reach the waiver exception, though the parties had briefed it.

## SUMMARY OF THE ARGUMENT

### A. The Court Had Subject-Matter Jurisdiction.

Two exceptions to the FSIA's general rule of foreign sovereign immunity from suit apply to PICCOL and Mr. Chiejina's claim: the arbitration exception, 28 U.S.C. § 1605(a)(6), and the waiver exception, 28 U.S.C. § 1605(a)(1).

To show that the arbitration exception applies, PICCOL and Mr. Chiejina must produce the agreement between Nigeria and a private party to arbitrate; the award an arbitrator issued under that agreement; and the treaty governing the award. They have met their burden. First, they produced the agreement to arbitrate between Nigeria and PICCOL. Second, they produced the award, which no one doubts was made under the agreement to arbitrate.

6

Third, they produced the New York Convention, which no one doubts governs the award.

Nigeria concedes that the district court had jurisdiction of PICCOL's claim, but it asserts that the court did not have jurisdiction over Mr. Chiejina's claim. Its argument fails for three reasons.

First, questions of arbitrability are merits questions, not jurisdictional questions. When a petitioner produces an agreement to arbitrate between the foreign state and a private party, an award made under that agreement, and a treaty governing the award, questions about whether the arbitrator exceeded her powers or whether the foreign state had agreed to arbitrate disputes with a particular claimant are merits questions to be decided under Article V of the New York Convention.

Second, the plain text of § 1605(a)(6) requires an agreement to arbitrate between *the* foreign state and *a* private party—not between the foreign state and the award creditor, or the foreign state and the petitioner seeking confirmation. The statute therefore leaves questions about the rights of private party non-signatories under an agreement to arbitrate to the merits stage.

Third, the case is unlike *Simon v. Republic of Hungary,* 812 F.3d 127 (D.C. Cir. 2016), in which the claimants asserted several independent claims. Here there is one claim—a claim for breach of contract—and the arbitrator decided that both PICCOL and Mr.

7

Chiejina were entitled to damages on account of the breach. Thus the rule that motions to dismiss on FSIA immunity grounds should be decided claim-by-claim does not apply here.

Although the district court did not decide whether the waiver exception to FSIA immunity applies, the parties briefed the issue, and the Court can affirm on any ground that appears in the record. If the Court reaches waiver, it should adopt the Second Circuit's *Seetransport* rule and hold that Nigeria, by agreeing to the New York Convention, implicitly waived its foreign sovereign immunity in award enforcement cases brought in other Convention states. Because the Convention expressly contemplates proceedings to confirm awards in foreign courts, any state in Nigeria's position must have understood when it agreed to the Convention that it could face such proceedings. The Court has already approved this reasoning twice, though only in an unpublished decision and in dicta, and if it reaches waiver, the Court should approve the rule of *Seetransport* again now.

### B. Service of Process was Proper.

The FSIA prescribes four methods for service, and the plaintiff must attempt each available method in the order the statute prescribes. Neither the plaintiff's preference for one method over another nor the foreign state's preference matters. The statute is

designed to make sure that the summons and complaint reach the foreign official most likely to understand American procedure— the foreign minister—when no treaty governing service applies and when the parties have not agreed on a special arrangement for service.

In almost every § 1608(a)(1) case, the plaintiff, not the foreign state, argues that there is a special arrangement for service, to avoid having to serve process using the more formal and onerous methods set out later in Section 1608(a). The foreign state, not the plaintiff, argues that it must be served under the more formal methods the FSIA prescribes. So the courts, to protect the interest of foreign states in avoiding the burdens of litigation, construe § 1608(a)(1) narrowly. Nigeria itself argued for a narrow construction in a prior case. The Court should adopt a narrow construction, which serves the interests of the foreign state in almost every FSIA case, rather than the broad construction that Nigeria has opposed before but presses here.

All the cases but one distinguish between all-encompassing notice provisions in contracts, which govern all notices between the parties, and notice provisions that are limited to notices under the contract. Only all-encompassing notice provisions qualify as special arrangements for service. The notice provision in this case has only limited scope. Therefore, it is not a special arrangement

for service. The only contrary case has been rejected by three district court judges, including the judge in this case, as an obvious error.

If the Court finds that service was improper, it should not dismiss the case but should instead remand with instructions to allow PICCOL and Mr. Chiejina to serve process again, because there is a reasonable prospect that they could serve process by the method Nigeria asserts they should have used.

**ARGUMENT**

### A. The District Court Had Subject-Matter Jurisdiction Because the Arbitration and Waiver Exceptions to FSIA Immunity Applies.

#### 1. The Arbitration Exception Applies.

Under the arbitration exception, a court has subject-matter jurisdiction in an action against a foreign state that is brought:

> either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit [an arbitrable claim] to arbitration … or to confirm an award made pursuant to such an agreement to arbitrate, if … the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards….

28 U.S.C. § 1605(a)(6). To show that the exception applies, Mr. Chiejina and PICCOL must produce the agreement to arbitrate between the foreign state and a private party, the award based on that

10

agreement, and the treaty that governs the award. *See Chevron Corp. v. Republic of Ecuador,* 795 F.3d 200, 204–05 (D.C. Cir. 2015). Nigeria, though, has the burden of persuasion once PICCOL and Mr. Chiejina meet their burden. *Id.*

Mr. Chiejina and PICCOL produced the arbitration agreement, which is (1) "an agreement made by the foreign state," Nigeria, (2) "with … a private party," PICCOL, (3) "to submit" an arbitrable claim to "arbitration." *See* 28 U.S.C. § 1605(a)(6). They also produced the award, which was made under the agreement to arbitrate. And the award is governed by "a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards," the New York Convention. That is enough to show that the arbitration exception applies. But Nigeria claims that the private party who seeks to confirm the award must be a party to the agreement to arbitrate.

Nigeria is wrong. The district court had jurisdiction to consider PICCOL and Mr. Chiejina's petition for three reasons. First, because Nigeria was a party to the agreement to arbitrate, its challenge to arbitrability is a merits challenge, not a jurisdictional challenge. Second, the text of the statute shows that all that is required for jurisdiction is an agreement to arbitrate between Nigeria and a private party, not an agreement between Nigeria and the

11

award creditor. Third, there is only a single claim in this case—a single wrong that injured both PICCOL and Mr. Chiejina.

### a. The Arbitration Exception Applies Even When the Foreign State May Have a Merits Defense That the State Had Not Agreed to Arbitrate Disputes with A Particular Award Creditor.

Because the United States is a party to the New York Convention, American courts generally must confirm arbitral awards that fall under the Convention. *See* New York Convention art. III; 9 U.S.C. § 207. The Convention does, however, have a short list of grounds on which a court can refuse confirmation. *See* New York Convention art. V. One ground for refusing confirmation is that "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." New York Convention art. V(1)(c). Nigeria's argument implies that it thinks it has a defense to confirmation under Article V(1)(c).[1] But a court does not lack jurisdiction to hear a

---

[1] Nigeria's defense will fail. The parties arbitrated under the arbitral rules appended to the Nigerian Arbitration and Conciliation Act. Article 21(1) of those rules is identical to Article 21(1) of the UNCITRAL Arbitration Rules, G.A. Res. 31/98, art. 21(1) (Dec. 15, 1976). The rule provides: "The arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including

case that otherwise falls under the FSIA's arbitration exception just because there are grounds under the Convention to refuse to confirm the award, and more specifically, just because a foreign state that lost an arbitration claims that it had not agreed to arbitrate the claim it lost.

The cases in which foreign states argue that arbitrators issued awards in disputes that the states had not agreed to arbitrate fall into two categories. In the first, the foreign state has entered into an arbitration agreement and the arbitrator, rightly or wrongly, has issued an award under that agreement. But the foreign state denies that the dispute with the claimant was arbitrable. Cases in this category hold that arbitrability is a merits question. *LLC SPC Stileks v. Republic of Moldova,* 985 F.3d 871 (D.C. Cir. 2021), is typical. There, the undisputed jurisdictional facts included the agreement to arbitrate (in that case, an investment

---

any objections with respect to the existence or validity of the arbitration clause or of separate arbitration agreement." (ECF 19-1 at 27). And adopting the UNCITRAL Rules "provides clear and unmistakable evidence that the parties intended for the arbitrator to decide questions of arbitrability." *See Chevron,* 795 F.3d at 207–08. Nigeria participated in the arbitration without ever challenging the arbitrability of Mr. Chiejina's claim or Mr. Chiejina's status as a claimant. Although Nigeria's Arbitration and Conciliation Act allows a Nigerian court to set aside an award on an application brought within three months of the award (A. 92-93), Nigeria never asked a Nigerian court to set aside the award.

treaty and notice to arbitrate rather than a contract), the award made under the treaty, and the New York Convention. Moldova argued that the petitioner was not an investor entitled to demand arbitration under the treaty, just as Nigeria claims that Mr. Chiejina is not a party to the arbitration agreement entitled to demand arbitration under the contract. The court rejected Moldova's argument that it lacked jurisdiction. It held that Moldova might have a defense to confirmation under the Convention, but that "the arbitrability of a dispute is not a jurisdictional question under the FSIA." *Id.* at 878.

*Chevron* is similar. *Chevron,* like *Stileks,* was an investment treaty case. Ecuador argued, as Nigeria argues here (with respect to Mr. Chiejina) that it had not agreed to arbitrate. The Court rejected the argument because it held that the district court was not required "to make a de novo determination of whether Ecuador's offer to arbitrate in the BIT encompassed Chevron's breach of contract claims." *Chevron,* 795 F.3d at 205. Ecuador's argument failed because, like Nigeria's argument, it "conflates the jurisdictional standard of the FSIA with the standard for review under the New York Convention." *Id.*

The second category comprises cases in which the foreign state has not agreed to arbitrate, and the question is whether it can

14

be bound by an agreement to arbitrate made by, say, an instrumentality of the foreign state. In *First Investment Corp. v. Fujian Mawei Shipbuilding, Ltd.,* 703 F.3d 742 (5th Cir. 2012), for example, First Investment arbitrated a claim against two Chinese shipbuilding companies, one a state-owned company, under a contract containing an agreement to arbitrate. It asked the court to confirm the award against the two parties and against the Chinese state on an alter ego theory, as China was the sole shareholder of the state-owned shipbuilder. The court held that it lacked jurisdiction because China was not a party to the arbitration agreement. *See id.* at 756. *Gater Assets Ltd. v. AO Moldovagaz,* 2 F.4th 42 (2d Cir. 2021), is similar: the court refused to renew an old default judgment that had confirmed an award against Moldova on the grounds that the party to the agreement to arbitrate was an alleged instrumentality of the Moldovan state, and the state itself was not a party to the agreement to arbitrate. *See id.* at 67.

This case is like *Stileks* and *Chevron* and unlike *First Investment* and *Gater.* Nigeria has certainly agreed to arbitrate claims, and the arbitrator has certainly issued an award pursuant to that agreement. Mr. Chiejina and PICCOL are not trying to hold Nigeria to an agreement to arbitrate that Nigeria itself never made: there is no question that Nigeria itself is party to the contract under which the arbitrator made her award.

15

The distinction Nigeria seeks to draw between this case and *Stileks* and *Chevron* is unsound. Nigeria says (Br. at 15–17) that in *Stileks* and *Chevron* there was no question that an agreement to arbitrate existed. But here, too, there is no question that an agreement to arbitrate exists. The only question is whether Mr. Chiejina's claim was within the scope of that agreement. This is the same question the Court faced in *Stileks* and *Chevron*, holding in each that where an arbitrator has issued an award under a treaty, questions about whether the foreign state had agreed to arbitrate the claim are merits questions, not jurisdictional questions.

> **b.  The FSIA's Plain Text Shows That an Agreement with Any Private Party Is Sufficient If the Award Is Made Under That Agreement.**

The FSIA requires "an agreement made by the foreign state with or for the benefit of a private party." 28 U.S.C. § 1605(a)(6). It does not require an agreement made by the foreign state with or for the benefit of *the claimant,* or with or for the benefit of *the award creditor,* or even with or for the benefit of *the* private party. It requires an agreement made by *the* foreign state with *a* private party.

The indefinite article, "a" or "an," is used when "referring to something not specifically identified … but [instead] treated as one of a class: one, some, any." *Citizens for Responsibility & Ethics*

*in Wash. v. FEC,* 971 F.3d 340, 354 (D.C. Cir. 2020) (citation omitted). Se*e also Black's Law Dictionary* 77 (5th ed. 1979) (the indefinite article is "equivalent to 'one' or 'any'").

So when the statute refers to an agreement "with … a private party," it cannot be read to refer to the agreement with a *particular* private party, for example the private party petitioning for confirmation. *See Balkan Energy Ltd. v. Republic of Ghana,* 302 F. Supp. 3d 144 (D.D.C. 2018) (holding that the court had jurisdiction over a petition brought by the assignee of an award rather than by the original award creditor). All the statute requires is that the award be made under an agreement with *some* private party. The definite article "the" appears earlier in the same sentence, strengthening the case. The agreement under which the award is made must be between *the* foreign state, that is, the foreign state against whom the petition is brought, and *a* private party.

This construction accords with the cases discussed above. In particular, it accords with cases such as *First Investment* and *Gater,* since in those cases the problem was that an instrumentality of the foreign state had signed an agreement to arbitrate but the foreign state itself had not. The arbitration exception applies when the award was made under a written agreement between the foreign state and a private party; questions about whether the dispute

was one the foreign state had agreed to arbitrate are merits questions, not jurisdictional questions. Only if the petitioner cannot show that the award was made under a written agreement between the foreign state and some private party does the district court lack subject-matter jurisdiction.

### c. Because There Was Only One Claim In The Arbitration, the Court Should Not Dismiss Mr. Chiejina.

Nigeria concedes that the Court would have subject-matter jurisdiction if PICCOL were the only claimant. Its only jurisdictional argument turns on Mr. Chiejina's presence in the case. Nigeria's position is that PICCOL's claim should survive but that Mr. Chiejina's claim should be dismissed. Its argument misconstrues *Simon v. Republic of Hungary,* 812 F.3d 127 (D.C. Cir. 2016).

As *Simon* says, the courts "make FSIA immunity determinations on a claim-by-claim basis." *Simon,* 812 F.3d at 141. In *Simon,* the plaintiffs were Hungarian Jews who survived the Holocaust and who brought claims against Hungary and its state-owned railway for the wrongful taking of their property (under headings such as conversion and unjust enrichment), and for personal injury (under headings such as false imprisonment, torture, and assault). Thus the claimants had separate claims for distinct

18

harms, which they asserted fell within the expropriation exception to FSIA immunity, 28 U.S.C. § 1605(a)(3). The point of *Simon* is that a court must decide which of the claims are within an exception to FSIA immunity and which are not. Claims that are not within an exception—in *Simon,* the personal injury claims, *see Simon,* 812 F.3d at 141—must be dismissed.

But here, the arbitrator awarded damages to PICCOL and Mr. Chiejina jointly, without specifying that part is for PICCOL and part for Mr. Chiejina. There are two claimants, but a single claim—a claim for breach of contract. The time to argue that Mr. Chiejina had no right to claim damages for the breach—assuming that that is so under Nigerian law, which Nigeria made no effort to prove, either here or during the arbitration—was at the arbitration. The New York Convention does not permit a court to second-guess the merits of the arbitrator's evident conclusion that Mr. Chiejina was entitled to the damages that resulted from Nigeria's breach of the contract.

## 2. The Waiver Exception Applies.

Because the district court held that it had jurisdiction under the arbitration exception, it did not reach the waiver exception.

19

But the parties briefed the issue, and the Court can affirm a decision under a different legal theory than the district court used. *See Larson v. Northrop Corp.,* 21 F.3d 1164, 1169 (D.C. Cir. 1994).

In *Seetransport Wiking Trader Schiffarhtsgesellschaft mbH v. Navimplex Centrala Navala,* 989 F.2d 572 (2d Cir. 1993), the Second Circuit held that any state that has signed the New York Convention has waived its foreign sovereign immunity in cases seeking to confirm an award governed by the Convention, because the state "must have contemplated enforcement actions in other signatory States" when it signed the Convention. *Id.* at 578.

Although this Court has "favorably cited *Seetransport* and its reasoning," *Process & Indus. Dev. Ltd. v. Federal Republic of Nigeria,* 27 F.4th 771, 774 (D.C. Cir. 2022) (citing *Creighton Ltd. v. Gov't of Qatar,* 181 F.3d 118 (D.C. Cir. 1999) and *Tatneft v. Ukr.,* 771 Fed. App'x 9 (D.C. Cir. 2019) (per curiam)), it has not "formally adopted it." *Id.* at 774. And in light of "the ready applicability of the arbitration exception" and what it deemed "significant policy concerns,"[2] this Court has recently decided to avoid the question. *See Process & Indus. Dev.,* 27 F.4th at 775 n.3.

_____

[2] The United States, as amicus curiae, has noted that adopting *Seetransport* may "have implications for the treatment of the United States in foreign courts and for our relations with foreign states." *Id.* at 775 n.3. But the government did not argue that *Seetransport* was substantively wrong.

If the Court reaches the waiver issue in this case, it should take the opportunity to adopt the rule of *Seetransport* at last. The Second Circuit's reasoning is compelling. The New York Convention applies to the "recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, art. I. Each contracting state is required to "recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." *Id.* art. III. So when Nigeria agreed to the Convention, it must have understood that it could face award confirmation actions in the courts of other states that were party to the Convention. *Seetransport,* 989 F.2d at 578.

In the district court, Nigeria did not argue against the rule of *Seetransport* as a general matter. Instead, it claimed that the rule should not apply against a foreign state when the arbitration took place in that state's territory. In other words, Nigeria conceded that the waiver exception would have applied if the arbitration with Mr. Chiejina and PICCOL had taken place in London, but that the waiver exception did not apply because the arbitration took place in Lagos.

Nothing in the Convention supports that view. The Convention applies to awards "made in the territory of a State other than

21

the State where the recognition and enforcement of such awards are sought." New York Convention, art. I(1). A state signing the Convention thus could have no doubt that the Convention requires other countries to confirm an award resulting from an arbitration that took place in its own territory. Nigeria might have had reason to think that the Convention did not require a *Nigerian* court to confirm the award the petitioners obtained against it. But nothing in the Convention could have led Nigeria to think, when it signed the Convention, that parties who arbitrated claims against the Nigerian government in Nigeria would not be entitled to have the award confirmed in the courts of other states if, as here, Nigeria failed to pay for years.

The only case Nigeria cited below to support its argument was *Diag Human, S.E. v. Czech Republic Ministry of Health,* 64 F. Supp. 3d 22 (D.D.C. 2014), *rev'd on other grounds,* 824 F.3d 131 (D.C. Cir. 2016). In *Diag,* the Czech Republic moved to dismiss "on numerous grounds, including failure to state a claim under the New York Convention, the SPEECH Act of 2010, and forum non conveniens," but not for lack of subject-matter jurisdiction. *Id.* at 25. The Court considered jurisdiction sua sponte and dismissed. Its main basis for dismissal was the finding that the relationship between the parties was not a commercial relationship and thus was not within the scope of the New York Convention. Thus the

22

arbitration exception to immunity did not apply. *See id.* at 32–33. The Court also held that the Czech Republic had not implicitly waived its immunity because the arbitration took place in the Czech Republic. *See id.* at 31. On this point, the district court cited *Foremost-McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 444 (D.C. Cir. 1990), for the proposition that this Court had only found implied waivers of immunity in three circumstances: when "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that the law of a particular country governs a contract; or (3) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity."

On appeal, this Court reversed, holding that the parties had a commercial relationship sufficient to bring the case within the arbitration exception. *See Diag Human, S.E. v. Czech Republic Ministry of Health,* 824 F.3d 131 (D.C. Cir. 2016). The opinion did not mention waiver. Diag did argue waiver on appeal, but its argument was that the Czech Republic had implicitly waived sovereign immunity by bringing a motion to dismiss for failure to state a claim and for forum non conveniens without raising sovereign immunity. Diag did *not* argue that the Czech Republic had implicitly waived immunity by signing the New York Convention. *See id.* at 140 (Sentelle, J., dissenting).

23

Thus in the case Nigeria relies on, the district court decided the implied waiver issue sua sponte without argument. The petitioner never even sought to argue that the Czech Republic had waived its immunity by joining the Convention. *Diag* does not provide any support for its conclusion on implicit waiver view other than the citation to *Foremost-McKesson.* But *Foremost-McKesson* was not an arbitration case, and this Court's statement of three grounds on which other courts had found an implied waiver was dicta. Especially considering *Creighton* and *Tatneft,* which treat a state's agreement to the New York Convention as the key fact in deciding implied waiver, *Diag* carries no real weight.

### B. Service of Process Was Proper, Because the Notice Provision in The Contract Is Not a "Special Arrangement for Service" Within the Meaning of the FSIA.

Nigeria argues that PICCOL and Mr. Chiejina should have served process using a "special arrangement for service between the plaintiff and the foreign state," 28 U.S.C. § 1608(a)(1), that it claims to find in the parties' contract. The question on appeal is whether the contract provision that Nigeria cites is such a "special arrangement for service." It is not. Nigeria's supposed preference to be served under the contract's notice provision carries no weight. Its arguments fail to construe 28 U.S.C. § 1608(a)(1) narrowly. And the contract language covers only notices required or

24

authorized by the contract itself, not service of process in a post-award confirmation case in another country.

### 1. The FSIA's Methods of Service Are Mandatory, and the Foreign State's Preferences Are Irrelevant.

Nigeria asserts that when "a foreign state has specifically articulated a preferred method of service, that decision should be entitled to significant deference." (Br. at 23). That is wrong, and the cases Nigeria cites say no such thing. *See Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148 (D.C. Cir. 1994); *Republic of Sudan v. Harrison,* 139 S. Ct. 1048 (2019).

The FSIA disregards the parties' preferences. The statute, 28 U.S.C. § 1608(a), prescribes four methods of service, and the plaintiff must try each available method of service in the order prescribed. *See Barot v. Embassy of Zam.,* 785 F.3d 26, 27 (D.C. Cir. 2015).[3] Only when one available method of service fails may the plaintiff move on to the next. If the parties agreed on a "special arrangement for service," 28 U.S.C. § 1608(a)(1), then the plaintiff must use it whether he wants to or not, and whether or not the

_____

[3] The plaintiff must try each *available* method of service. In many cases, no one contends that there is a special arrangement for service or an applicable international convention. In those cases the plaintiff need not and cannot attempt service under 28 U.S.C. § 1608(a)(1) or (2).

foreign state prefers it.[4] If there is no special arrangement for service but the foreign state is a party to an "applicable international convention on service of judicial documents," 28 U.S.C. § 1608(a)(2), then the plaintiff must attempt service under the convention even if he or the foreign state prefer another method. And if there is no special arrangement for service and no applicable convention, then the plaintiff not only *may,* but *must* serve process by

> sending a copy of the summons and complaint and a notice of suit … by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned.

28 U.S.C. § 1608(a)(3). That is so even if the foreign state would prefer to be served in another way. It would be highly surprising, however, if a foreign state really did prefer to be served in another way. The purpose of § 1608(a)(3), after all, is to get the documents to the department of the foreign government "most likely to understand American procedure." *Transaero,* 30 F.3d at 154. That is the Foreign Ministry or its equivalent. *Id.*

---

[4] If there is a special arrangement for service, then of course it reflects the *shared* preference of the parties, at least at the time they agreed on the special arrangement.

Foreign states that do want to direct American summonses to officials other than the minister best positioned to know how to respond can do so explicitly. *See, e.g.*, *Lovati v. Bolivarian Republic of Venez.,* 2020 U.S. Dist. LEXIS 211458, at *6 (S.D.N.Y. Nov. 11, 2020) (agreement for service of process on consular officials); *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic,* 2013 U.S. Dist. LEXIS 199771, at *7–8 (S.D. Fla. Jun. 10, 2013) (agreement for service of process on diplomatic or consular officials). Or, as explained below,[5] they can agree to an all-encompassing notice provision that does not limit its scope to notices under the contract.

But as Nigeria's own approach in another case shows, even when Nigeria enters into such an all-encompassing agreement, it does not really prefer to direct American summonses to an official other than the Foreign Minister. In *Process & Industrial Developments, Ltd. v. Federal Republic of Nigeria,* another award recognition case that this Court has twice considered, the amount of the award was thousands of times the amount of the award here. *See Process & Indus. Devs.,* 27 F.4th at 773 (award worth more than $10 billion with interest). Under the contract, "any notice which either Party may desire to give to the other Party" could be given

---

[5] See section 3, *infra.*

to the Minister of Petroleum Resources by means including fax. (Document 1780490 in Case No. 18-7154, at p. 52). Yet when Nigeria had the chance to challenge service process, it argued—successfully—that the award creditor should have had the documents mailed to the foreign *minister* rather than the foreign *ministry.* It did not argue that service on the foreign minister was improper because the parties had a special agreement on service of process.[6]

### 2.  Section 1608(a)(1) Must Be Construed Narrowly.

The law demands strict compliance with the FSIA's service requirements, for good reason:

---

[6] The Court should take judicial notice of what the notice provision in the contract says and what Nigeria said in its brief for the reasons stated in Mr. Chiejina and PICCOL's unopposed motion for judicial notice, filed on March 16, 2023. Briefly, these are facts whose accuracy cannot reasonably be questioned, *see* Fed. R. Evid. 201(b)(2), and the appellees are not asking the Court to take judicial notice of the truth of any assertions, but just the fact of the position Nigeria took. *See Yi Tai Shao v. Roberts,* 2019 U.S. App. LEXIS 33895, at *3–4 (D.C. Cir. Nov. 13, 2019); *Crumpacker v. Ciraolo-Klepper,* 715 Fed. App'x 18, 19 (D.C. Cir. 2018) ("The court takes judicial notice of the existence of these filings, not the accuracy of any legal or factual assertions made therein"). *See also Partridge v. Presley,* 189 F.2d 645, 647 (D.C. Cir. 1951) (court can take judicial notice of its own records). Mr. Chiejina and PICCOL had no reason to offer these documents in the district court, because Nigeria makes its argument about the deference owed to foreign states' preferred methods of service for the first time on appeal.

> [T]here are circumstances in which the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction. The service rules set out in § 1608(a)(3), which apply to a category of cases with sensitive diplomatic implications, clearly fall into this category. Under those rules, all cases must be treated the same.

*Republic of Sudan v. Harrison,* 139 S. Ct. at 1062.

Except for this case and one other case,[7] in every § 1608(a)(1) case in this circuit, the private plaintiff, not the foreign state, claimed the contractual notice provision was a special arrangement for service. The foreign state, not the private plaintiff, argued that the provision does not reach service of process. Because foreign states almost always deny that contractual notice provisions are special arrangements for service, courts have read § 1608(a)(1) "narrowly." *See, e.g., Berkowitz v. Republic of Costa*

---

[7] The only example aside from this case known to the appellees in which a foreign state argued for a supposed special arrangement for service is *Commissions Import Export S.A. v. Republic of the Congo,* 2015 U.S. Dist. LEXIS 192785 (D.D.C. Jul. 6, 2015), in which the plaintiff had made service under 28 U.S.C. § 1608(a)(3) and the foreign state, seeking to set aside a default judgment, argued that the service was insufficient because the parties had a special arrangement for service that the plaintiff had failed to use. The argument was weak—the foreign state did not identify any language that could be a special arrangement for service—and the court easily rejected it. *See id.* at *4–5.

29

*Rica,* 288 F. Supp. 3d 166, 173 (D.D.C. 2018). A narrow construction serves the interests of foreign states in shielding themselves "from trial and the attendant burdens of litigation," *Process & Indus. Devs., Ltd. v. Federal Republic of Nigeria,* 962 F.3d 576, 584 (D.C. Cir. 2020), in almost every case. The narrow construction explains why, as Nigeria points out (Br. at 23), the foreign state prevailed on this issue in all the cases on which Mr. Chiejina and PICCOL rely: Mr. Chiejina and PICCOL are defending the position that foreign states usually take (and the position Nigeria preferred in the *Process & Industrial Developments* case). And Nigeria is defending the position that private plaintiffs who want to avoid the FSIA's onerous requirements usually take.

Nigeria has benefitted in other cases from the narrow construction courts give to § 1608(a)(1). In *Enron Nigeria Power Holding, Ltd. v. Federal Republic of Nigeria,* 225 F. Supp. 3d 18 (D.D.C. 2014), another award confirmation case, Enron pointed to language in the contract governing the exchange of "[a]ll notices or other communications required or permitted to be given hereunder." The court rejected Enron's argument that the contract had a special arrangement for service, holding that the contract provision referred only to notices "required or permitted to be given *hereunder,*" that is, under the contract. *See id.* at 22–23.

30

This Court should not aim to protect the interests of a single foreign state that has made the unusual decision to demand service of process under a contractual notice provision rather than under the more formal methods set out in the FSIA. It should instead aim to protect the interests of foreign states generally—the interests Nigeria itself asserted in *Enron.* Foreign states almost always oppose arguments like Nigeria's argument here—attempts to shoehorn service of process into a contractual notice provision by giving the provision an excessively broad reading. The meaning of a contractual notice provision should not depend on which party is asserting that it constitutes a special arrangement for service and which party is denying it.

### 3. Only All-Encompassing Notice Provisions Are Special Arrangements for Service of Process, and the Notice Provision in the Contract Was Not All-Encompassing.

The cases are (nearly) unanimous in their agreement with the judge's decision below. They distinguish between notice provisions that apply to all notices whatsoever that are to be given to the foreign state (for instance, "[a]ll notices, requests, demands, or other communications to or upon the respective parties hereto," *Marlowe v. Argentine Naval Comm'n,* 604 F. Supp. 703, 704 (D.D.C. 1985)), and notice provisions governing only notices *un-*

31

*der the contract* (for instance, "[a]ll notices … to be given, submitted, or made hereunder by any Party to another," *Hardy Expl. & Prod. (India) Inc. v. Gov't of India,* 219 F. Supp. 3d 50, 61 (D.D.C. 2016)). Only an all-encompassing notice provision governs service of process in a post-arbitration confirmation case. This distinction runs through all the cases on which both parties rely.

In all the cases in this circuit with notice language governing all notices between the parties to the contract, courts found special arrangements for service of process. *See Marlowe,* 604 F. Supp. at 704 ("All notices, requests, demands, or other communications to or upon the respective parties hereto …"); *Int'l Rd. Fed'n v. Embassy of Dem. Republic of the Congo,* 131 F. Supp. 2d 248, 251 (D.D.C. 2001) ("all notices, demands, or requests between Sublessor and Sublessee").[8]

---

[8] The same is true in other circuits and state courts. *See Space Sys./Loral, Inc. v. Yuzhnoye Design Off.,* 164 F. Supp. 2d 397, 402 (S.D.N.Y. 2001) ("all notices and communications between the parties"); *Saunders Real Est. Corp. v. Consulate Gen. of Greece,* 1995 U.S. Dist. LEXIS 14893, at *4–5 (D. Mass. Aug. 11, 1995) ("all notices") (internal quotation marks omitted); *Sky Petroleum, Inc. v. Ministry of Econ., Trade & Energy of Alb.,* 2012 U.S. Dist. LEXIS 193304, at *6 (W.D. Tex. Jan. 20, 2012) ("[A]ll matters and notices which are left in writing at the office of the Party concerned or which are received by such Party when delivered personally or sent by facsimile transmission at its main office in Albania shall be deemed to be validly served"); *101–115 W. 116th St. Corp.*

But with one exception discussed below, in the cases with notice language that limits the scope of the notices governed by the notice clause, the courts in this circuit have rejected the argument that the language constituted a special arrangement for service. *See Berkowitz,* 288 F. Supp. 3d at 173 ("[n]otices and other documents in disputes under [Chapter 10] Section B" of an investment treaty); *Hardy,* 219 F. Supp. 3d at 57–58 ("All notices, statements, and other communications to be given, submitted or made *hereunder*") (emphasis supplied); *Orange Middle East & Afr. v. Republic of Equatorial Guinea,* 2016 U.S. Dist. LEXIS 65147, at *8 (D.D.C. May 18, 2016) ("notices, agreements, waiver declarations, and other communications made *under this Agreement*") (emphasis in original); *Enron,* 225 F. Supp. 3d at 20 ("[a]ll notices or other communications required or permitted to be given *hereunder*") (emphasis supplied).[9]

---

*v. Consulate Gen. of the Republic of Sen.,* 2023 N.Y. Misc. LEXIS 858, at *5–6 (N.Y. Sup. Ct. Feb. 27, 2023) ("a … notice or communication which owner may desire or be required to give to Tenant").

[9] Again, the same is true elsewhere. *See Berdakin v. Consulado de La Republica de El Salvador,* 912 F. Supp. 458, 466 (C.D. Cal. 1995) ("Whenever under this Lease a provision is made for any demand, notice or declaration of any kind").

*G.E. Transport S.p.A. v. Republic of Albania,* 693 F. Supp. 2d 132 (D.D.C. 2010), is the only exception. Nigeria's brief says nothing about the reasons that three judges, including the judge here, have rejected *G.E. Transport* as an obvious mistake.

In *G.E. Transport,* the contract had a notice provision providing that "[a]ny notice to be given to [Albania] under these Conditions shall be in writing." *See Orange,* 2016 U.S. Dist. LEXIS 65147, at *10. But *G.E. Transport* elides the words "under these conditions." As quoted in the decision, the notice provision reads: "[a]ny notice to be given to [Albania] … shall be in writing." *G.E. Transport,* 693 F. Supp. 2d at 136 (ellipsis in original). The court held that the contract created a special arrangement for service. *Id.* at 136–37. The decision would have been correct, if the contract had not included the words that the judge left out when he quoted it. But as Judge Collyer later observed:

> Since the Judge did not include the limiting words in his opinion, they were clearly not important to his analysis. To the extent that the Judge would have found a special arrangement even with the omitted words, this Judge disagrees.

*Orange,* 2016 U.S. Dist. LEXIS 65147, at *11. *Accord Hardy,* 219 F. Supp. 3d at 64 (Contreras, J.). Judge Leon, in the decision on appeal here, agreed. (A. 100). *G.E. Transport* is plainly wrong.

34

The language in the notice provision in this case is like the language in *Berkowitz, Hardy,* and *Orange,* and unlike the language of *Marlowe* and *International Road Federation.* It governs notices "required or authorised by this Agreement." In other words, it is limited in its scope in just the way that the provisions in *Berkowitz, Hardy,* and *Orange* were limited in their scope.

Nigeria claims the word "authorised" is "broad," and that its plain meaning "encompasses notices far beyond those specifically enumerated in the Agreement." (Br. at 21). But Nigeria identifies nothing in the contract that authorizes a party to petition to confirm an arbitral award. Nor does Nigeria support its appeal to plain meaning with any evidence, not even a dictionary definition of the word. In fact, the relevant meaning of "authorised"[10] is "duly sanctioned," 1 *Oxford English Dictionary* 572 (1971), or "empower[ed] <*authorized* to act for her husband>," *Merriam-Webster's Collegiate Dictionary* 77 (10th ed. 2001). Nothing in the contract sanctions or empowers either party to send process to the other in a post-award proceeding. In fact, the contractual limitation to notices "required or authorised" by the contract makes this clause significantly narrower than the clauses in *Berkowitz, Hardy,* and *Orange,* each of which refers to notices made under the

---

[10] Or "authorized." Nigeria uses British rather than American spellings.

35

contract or treaty without specifying whether the notices are authorized, required, or merely permitted. *Cf. Water Splash, Inc. v. Menon,* 581 U.S. 271, 284 (2017) (distinguishing treaty provisions authorizing a method of service of process from provisions merely permitting a method of service).

Nigeria also argues that the agreement "plainly contemplates service of a petition to confirm an arbitration award" because it contains an agreement to arbitrate. (Br. at 21). This argument implies that a standard notice provision in *any* contract that contains an agreement to arbitrate is necessarily a special arrangement for service. Nigeria's suggestion is radical, unmoored from the cases, and at odds with the narrow construction the courts give to § 1608(a)(1).

Finally, Nigeria points to Article 2(1) of the arbitral rules that governed the arbitration:

> For the purpose of these Rules, any notice, including a notification, communication or proposal, is deemed to have been received if it is physically delivered to the addressee or if it is delivered at his habitual residence, place of business or mailing address, or, if none of these can be found after making reasonable inquiry, then at the addressee's last known residence or place of business. Notice shall be deemed to have been received on the day it is so delivered.

(A. 94). It claims (Br. at 20) that "read in unison" with the contractual notice provision, the rule on notice supports the view that

36

service of process should have been made on the Minister for Intergovernmental Affairs, Special Duties & Youth Development, who was to receive notices under the contract. But Rule 2(1) says nothing about service of process in post-award proceedings. It applies only "for the purpose of these Rules," and nothing in the Rules refers to confirming awards.

### 4. If Service Was Improper, the Court Should Not Dismiss the Case.

Because only one method of service at a time is ever proper under the FSIA, a plaintiff in an FSIA case always runs the risk that he has chosen the wrong method. Mr. Chiejina and PICCOL had excellent reason to believe that there was no special arrangement for service, considering the overwhelming weight of the cases discussed above. The judge below thought Nigeria's argument on service was so weak that he summed up his view of Nigeria's argument with a single word: "Please!" (A. 99). Mr. Chiejina and PICCOL arranged for service promptly after petitioning in August 2021. They have been diligent.

In *Barot,* 785 F.3d at 29, the Court held it was error to dismiss rather than to quash service "when there exists a reasonable prospect that service can be obtained." If Nigeria is right and Mr. Chiejina and PICCOL should have served process under the contract's notice clause, they could effect service promptly. The Court

should afford them that opportunity by quashing the service rather than dismissing the petition.

## CONCLUSION

The Court should affirm the district court's order and remand the case for further proceedings. If the Court holds that service of process was improper, it should remand the case with instructions to quash the service with leave to re-serve the summons and petition.

Respectfully submitted,

*/s/ Theodore J. Folkman*

Theodore J. Folkman
RUBIN & RUDMAN, LLP
53 State Street
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com

*Appellees' Counsel*

38

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 8,468 words (as determined using the "word count" feature of Microsoft Word 2016).

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Supra.

*/s/ Theodore J. Folkman*

Theodore J. Folkman
RUBIN & RUDMAN, LLP
53 State Street
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com

*Appellees' Counsel*

## ADDENDUM

9 U.S.C. § 207 .................................................2a

New York Convention arts. I(1), III, and V ........3a

9 U.S.C. § 207

Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

A2

United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Jun. 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the New York Convention)

## Article I

1. This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.

\* \* \*

## Article III

Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles. There shall not be imposed substantially more onerous conditions or higher fees or charges on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards.

\* \* \*

A3

Article V

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

* * *

A5